## JULIA RHODUS, Respondent, v. KANSAS CITY LIFE INSURANCE COMPANY, Appellant.

### Kansas City Court of Appeals, May 15, 1911.

1. **LIFE INSURANCE: Application: Conditions: Delivery of Policy.** A written application for life insurance is no more than a proposal made to the insurance company, to be accepted or rejected by the company, and when such application states the time and manner for the proposition to become a completed contract, those conditions (such as delivery of a policy) must transpire before the contract takes effect, unless waived by the company.

2. ———: ———: **Agent: Authority.** An agent with authority to solicit life insurance, collect the premium and deliver policies which may be sent to him for that purpose by the company, but who does not issue or countersign the policies, is not authorized to make contracts of life insurance.

3. ———: ———: **Dead Man: Conditions Precedent.** The life of a dead man cannot be insured and the issuance and delivery of the policy during the lifetime of the insured are conditions precedent to liability.

4. ———: ———: **Waiver: Retaining Premium.** Conditions precedent to liability for life insurance, such as the approval of the medical director and the delivery of a policy, may be waived by the insurer. Where a soliciting agent takes a written application for life insurance containing a stipulation that no contract should become operative until the approval of the medical director at the home office, and the issuance and delivery of the policy, yet the agent takes a note for the first year's premium and transmits the application to the company, and the applicant dies before any action is taken on the application and no policy is issued; if the agent, with knowledge of the applicant's death (but which the company does not know), collects the note and after taking out his commission remits the balance to the company, which receives it, and after becoming informed of the facts, including the death of the applicant, retains the money: It was *held* that it ratified the acts of its agent in collecting the note as premium money on a completed contract of insurance, and to have become liable as though a policy had been delivered.

Appeal from Clay Circuit Court.—*Hon. Francis H. Trimble,* Judge.

AFFIRMED.

*Reed, Atwood, Yates, Mastin & Harvey* for appel·lant.

*James Simrall* and *Fyke & Snider* for respondent.

ELLISON, J.—Defendant is a life insurance com·pany located at Kansas City, Missouri, and it had an agent named Galvin, who solicited insurance at different places in the state, took applications and notes for first year's premiums, collected the notes and sometimes delivered policies after they were issued. Defendant also had a local medical examiner at Lawson, a town about fifty miles from Kansas City. Plaintiff, claiming that defendant made a binding verbal contract of life insurance on the life of her deceased husband, Charles O. Rhodus, in her favor, for five thousand dollars, brought this action for that sum and recovered judgment in the trial court.

The action is based on the following facts: On the 6th of January, 1909, at Lawson, Rhodus made written application to defendant, through Galvin, for the insurance claimed, payable to his wife at his death, and on the same day was examined by the local medical examiner at that place. The examination was written, made a part of the application and transmitted to defendant at Kansas City. Defendant insists that it did not receive the application until something more than a month, February 9th, thereafter; but it may be said from the whole record that there was evidence tending to show that it was received two days after its date; viz., January 8th. But, be that as it may. on the day the application was made, Rhodus gave his note to Galvin for $173.80 as the first year's premium, and the latter sold it to a bank in a nearby town, but by some means got it back again. Just one month after the application and note were taken, February 6th, Rhodus died. Defendant, at its office in Kansas City, did not know of his death for five days. In the interval there was some

degree of activity by the deceased's brothers, seemingly aided by defendant's agent. One of the brothers telephoned to the agent, who at the time seems to have been in Kansas City, telling him that he would like to get the premium note given by his deceased brother, and that if he, the agent, would go to a certain commission company in that city he could get the money due on the note. The agent collected the money from the company, and keeping out the larger part as his commission on the insurance, remitted the balance to the defendant by check on February 8th, which defendant, not knowing of Rhodus' death, accepted, but which it retained *after* learning of the death and *still* retains.

The application made by Rhodus was the usual one, embracing questions as to his age, health, bodily condition, other insurance, whether ever rejected by other companies, etc. The entire face of it showing that it was merely asking the company to insure him, and not purporting in any way to be an insurance. It also contained the following clause: "Should my application be approved and a policy of insurance issued, such policy with this application shall be and constitute the contract between the parties hereto. It is expressly agreed and understood upon my part that this contract is to be null and void and of no binding force whatever, unless my application is received and accepted at the home office of the company, and approved by the medical director, and the policy of insurance is delivered to me, or my beneficiary, during my lifetime and while in good health."

The undisputed fact appeared that at the time of Rhodus' death the application had not been acted upon; it was neither approved nor rejected by the company, and had not been seen by the medical director and no policy was ever issued by the company.

On the foregoing state of facts, defendant insists that a demurrer to the evidence should have been sustained by the trial court.

An application to be insured as the word signifies, in that connection, is no more than a proposition to the insurance company, and necessarily it must be first accepted before there can be a meeting of minds so as to form a binding contract. [McCully v. Ins. Co., 18 West Va. 782; McMaster v. Ins. Co., 99 Fed. 856, 866; Kohen v. Ins. Co., 28 Fed. 705.]

And where this written proposal states the time and manner for the proposition to ripen into a completed contract, as in this case, those conditions must transpire before the contract takes effect. [Kilcullen v. Ins. Co., 108 Mo. App. 61; McCully v. Ins. Co., supra; Noyes v. Ins. Co., 1 Mo. App. 584; Farmers & Merchants Ins. Co. v. Graham, 50 Neb. 818; Chamberlain v. Ins. Co., 109 Wis. 4.]

In this case the applicant himself made the binding statement in his application that there should be no contract of insurance until his application was accepted at the home office, approved by the medical director and a policy delivered during his lifetime. The evidence makes clear that neither of these conditions was complied with and undoubtedly there was no contract of insurance, unless they were waived by the company.

It is undoubtedly true that agents soliciting life insurance and collecting the premium, are not considered as authorized to make binding contracts of insurance. [Bliss on Life Ins., sec. 283.] The approval of an application, evidenced and followed by the delivery of a policy, is generally, though not universally, the consummation of a valid contract of life insurance, and so it is understood. Delivery of the policy during the life of the assured is a "condition precedent in order to complete" the contract. [Cravens v. Ins. Co., 148 Mo. 583, 599; Horton v. Ins. Co., 151 Mo. 604, 620; Kilcullen v. Ins. Co., supra.] Were these conditions, as emphasized by the above quoted provision in the application, waived? We do not find any evidence in the record that the defendant company ever authorized its agent Galvin to do

more than solicit insurance (taking applications therefor), collect the first year's premium (or take a note for it), and sometimes, when an application was approved, to deliver the policy which it would enclose to him for that purpose. There being no evidence that he had authority to sign, countersign or issue policies, this was not authority to contract for insurance; nor do the cases of King v. Ins. Co., 195 Mo. 290, or Springfield S. L. Co. v. Ins. Co., 151 Mo. 90, or Nickell v. Ins. Co., 144 Mo. 420, lend any countenance to such proposition. The evidence in this case as to the acts of the agent, do not put it within that class of cases where a fire insurance agent makes the contract, writes or fills out a policy in accordance therewith, and delivers it to the assured, as in Bush v. Ins. Co., 85 Mo. App. 155.

But Galvin, though unauthorized, yet assuming to act for the company, did several things which can only mean that he recognized an existing, completed contract of insurance. He received payment of the note through the agency of the deceased's brother; or, at least, he negotiated it and received the money upon it, after he knew of the death. He retained that part of it which was due him as commission for securing the insurance, and paid to defendant the balance, which it received and has kept with full knowledge of all the facts.

It is true that "there can be no valid insurance upon the life of one already dead at the time when the contract becomes complete." [1 Cooley's Briefs, 113.] But the evidence in this case does not show the negotiation and completion of a contract to insure the life of one who was dead. In other words, this case does not present an instance of a proposition to insure the life of a dead man. This is a case where the proposition for insurance was made by a live man, in good health, to an agent authorized to receive it and to transmit it to the defendant company. It was then for the approval or rejection of the company. As matters stood contractually, the company could have rejected it, and more

than that, it could have relied upon the provision which we have quoted from the application, that there was to be no contract until a policy was issued and delivered. But the company did not choose to stand on these conditions. It waived them by accepting the premium which was *paid for insurance,* with full knowledge of what the payment was for and of the assured's death. By that act it adopted the agent's acts as consummating a contract of insurance without a formal approval of the application by the medical director, or the issuance of a policy.

We have noticed the objections made to instructions given for the plaintiff, though we need not consider them, since the undisputed evidence—the conceded facts—show that a case was made against the defendant. Hence we affirm the judgment. All concur.