ANNIE E. CROHN, Respondent, v. THE ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA, Appellant.

Kansas City Court of Appeals, April 7, 1913.

1. **LIFE INSURANCE: Suicide: Delivery of Certificate.** The plaintiff sued to recover, as a beneficiary, on a contract of life insurance issued by the defendant to her husband, in July, 1892. On June 1, 1910, the plaintiff's husband died from the effects of a self-inflicted gunshot wound, and the defendant refused to pay the insurance, because suicide was a defense under the Kansas law. The defendant accepted the husband as a member, in Kansas, knowing him to be a resident of Missouri, when they were not authorized to do business in the latter State. The defendant delivered the husband's certificate to him by mail in Kansas City, Missouri, and according to it the certificate took effect on that date. *Held,* that the insurance was a Missouri contract, since the place of delivery was in Missouri, and the defense of suicide was not available to the defendant.

2. ———: **Contracts: Place of Delivery of Certificate.** When the actual delivery of a certificate is made, by the terms of the application, a condition precedent to the creation of liability on the part of the defendant, as an insurer, the contract of insurance is not complete until such delivery, and, if the delivery occurred in this State, the certificate would be a Missouri contract.

170 Mo. App.—18

Crohn v. U. C. T.

3. ——: Actual Delivery: Validity of a Contract. The actual delivery of a policy to the insured is not essential to the validity of a contract of life insurance unless expressly made so by the terms of the contract.

4. ——: ——: Place of Contract. The place where the final act occurs which makes it a binding contract, is the place of contract, and where an insurance contract is not to be completed or fully executed until the payment of a premium and delivery, the place of payment and delivery will be the place of contract, even though the contract should state the place of the insurer's residence should be deemed the place of contract.

5. ——: Contract: Issuance of a Policy. A binding contract of insurance may be made by the making and acceptance of a proposition without the issuance of a policy, the policy not being the contract but only the written statement thereof, but it is also true that the competency of the parties to expressly stipulate when it (the insurance contract) shall become operative cannot be questioned.

6. ——: Acceptance: Actual or Constructive. Until there is actual or constructive notice to the other party of the acceptance of a contract, it is still in the breast of the acceptor and may be revoked before it becomes binding.

7. DEFINITIONS: Terms. The term "issuance to him" must be given its usual significance to persons of ordinary intelligence and that significance was to send forth the certificate and put it in the hand of the plaintiff.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

AFFIRMED.

*Vorys, Sater, Seymour & Pease, Boyle & Howell* and *Joseph S. Brooks* for the appellant.

(1) The deceased Ruby S. Crohn having made application for membership of defendant order at Hutchinson, Kansas and being received into membership there, his contract was a Kansas contract, and is governed by the laws of the State of Kansas, and the plaintiff cannot recover, the evidence showing that he committed suicide. Hart v. M. W. A., 60 Kan. 678;

Hart v. Knights of Maccabees, *Id.*; Ritter v. Life Ins Co., 169 U. S. 139; Supreme Commandery v. Ainsworth, 71 Ala. 436; Hartman v. Keystone Ins. Co., 21 Pa. 466; Fitch v. Life Ins. Co., 59 N. Y. 557. (2) The certificate was binding on the company from the time it left the home office, and if not, then when the local agent received it in Kansas. Ins. Co. v. Babcock, 42 L. R. A. 91; Yonge v. Assur. Soc., 30 Fed. 902.

*Samuel R. Freet* and *Clyde Taylor* for respondent.

(1)  The sole question in this case is whether the insurance is a Missouri or Kansas contract.  The divisions of this brief are as follows:  The insurance is a Missouri contract because:  The rule is that the place where the last act occurs which makes the transaction a binding contract is the place of the contract and the law of that place is the law of the contract. Cravens v. Ins. Co., 148 Mo. 583, 50 S. W. 519, 53 L. R. A. 305, 71 Am. St. Rep. 628; Kilcullen v. Ins. Co., 108 Mo. App. 61; Pietri v. Seuguenot, 96 Mo. App. 258; Horton v. Ins. Co., 151 Mo. 604; Rhodus v. Ins. Co., 156 Mo. App. 281; Norman v. U. C. T., 163 Mo. App. 175.  (2)  The delivery of the certificate of membership or policy of insurance to the member was the last act which had to occur to make a binding contract of insurance in this case.  Folks v. Yost, 54 Mo. App. 55; White v. Reed, 60 Mo. App. 384; State v. Pierce, 52 Kan. 521; Brownell v. Greenwich, 4 L. R. A. (N. Y. App.) 691; Perkins County v. Graff, 114 Fed. 444; Sisk v. Ins. Co., 45 N. E. 804.

JOHNSON, J.—This is an action on a contract of life insurance issued by defendant to Ruby S. Crohn in July, 1892. Crohn died June 1, 1910, from the effects of a gunshot wound and plaintiff, his widow and beneficiary, brought this suit to recover the amount of the

policy. A jury was waived and the cause was submitted to the court on the pleadings and an agreed statement of facts. The court rendered judgment for plaintiff and defendant appealed.

Defendant is a fraternal beneficiary association incorporated in Ohio. At the time Crohn became a member and received the policy or certificate in suit he was a citizen of this State, residing in Kansas City and we infer from the statements of counsel that defendant at that time was authorized to do business as a fraternal association in Kansas but not in this State. Subsequently, and before the death of Crohn, defendant complied with the laws of this State relating to such societies and became authorized to do business therein. The contract of insurance, by its terms, exempted defendant from liability should Crohn commit suicide and for the purposes of this case plaintiff concedes the truth of the fact alleged in the answer as the principal defense, that such was the cause of his death and further admits that if the policy should be classed as a Kansas contract, she has no cause of action, or rather, that the defense of suicide would afford defendant complete exemption from liability. Plaintiff insists, however, that the policy is a Missouri contract and defendant concedes that if it is, the defense of suicide cannot be interposed, since defendant was not authorized to do business in this State as a fraternal society at the time the policy was issued. [Schmidt v. Foresters, 228 Mo. 675.]

Counsel agree that the controlling question in the case is whether the policy should be treated as a contract made in Missouri or in Kansas and the agreed statement of facts presents that question as one difficult of solution. The membership of the defendant society is composed of commercial travelers and one of the subordinate lodges is known as Council No. 34 at Hutchinson, Kansas. The constitution provides that "any white male person of good moral character

not under twenty-one and not over sixty years of age,
who has engaged for a term of not less than one year
immediately preceding the date of his application, as
a commercial traveler . . . and who has not lost a
hand, an arm, a foot, a leg or the sight of one or both
eyes, or is not deaf, or subject to fits, or is not men-
tally or physically infirm, or who has no wound, in-
jury or disease which will render him specially liable
to accidents . . . may become a member (if found
acceptable) upon application made in due form to a
subordinate council within whose jurisdiction he may
reside and the payment of ten dollars, one-half of
which shall accompany his application and the remain-
der of which shall be paid prior to his initiation. . . .
Any subordinate council may require any applicant
for membership to pass a satisfactory examination as
to his physical condition before acting on his applica-
tion. . . . The supreme executive committee may
impose a fine of ten dollars on any subordinate coun-
cil which admits to membership a person whose ap-
plication, as determined by such committee, shows that
he is not eligible thereto . . . such committee may
also reject the application of any ineligible or unde-
sirable person and may refuse to issue him a certifi-
cate of membership, but if such applicant shall have
been initiated he may if he so elects, be placed on
the list of social members, in which event his payment
of two dollars to the assessment fund shall be returned
to him. . . . The right of an initiate to indemnity
under the provisions of section 6, article 17 is condi-
tioned on the issuance to him of a certificate of mem-
bership by the supreme executive committee.''

The section just referred to provides: ''If any
member of the order (other than a social member) who
has paid, when due, all fees, fines, costs, dues and as-
sessments charged or levied against him shall sustain,
during the continuance of his membership and while
in good standing, bodily injury effected through exter-

nal, violent and accidental means, which alone shall occasion death . . . the order . . . shall pay to the person entitled thereto a sum not exceeding $5000," etc.

It appears from these and other provisions of the constitution and laws that the order was composed of two classes of members, i. e., social members who were entitled to all of the social privileges of the order but because of their undesirability as insurance risks were not entitled to participate in pecuniary benefits and beneficiary members who were entitled to participate in all of the privileges and benefits of the order. Further it appears that applicants were to be initiated before the question of their right to participate in pecuniary benefits should be determined; that the final decision of that question was vested in the supreme executive committee at Columbus, Ohio, and that no applicant should become a beneficiary member until "the issuance to him of a certificate of membership by the supreme executive committee."

Crohn made application to the local council at Hutchinson for membership in the order, paid all dues and assessments required of him and was duly initiated. His application followed the usual course and was acted upon by the supreme executive committee which decided to issue a membership certificate to him. The method of delivering certificates executed by the committee was prescribed by the laws as will appear in the following excerpt. "The applications of all candidates shall be forwarded to the supreme secretary within ten days after each candidate has been initiated . . . and the secretary of the supreme council shall issue a certificate of membership and forward the same to the subordinate council to which said applicant may be attached, with instructions for its delivery to said member unless the forwarding of such certificate be ordered withheld by the supreme executive committee."

Pursuant to this rule Crohn's certificate was forwarded by the supreme secretary to the secretary of the subordinate council at Hutchinson with instructions to deliver it to Crohn. Defendant knew that Crohn lived in Kansas City and with that knowledge received him as a member of the Hutchinson council. The secretary of that council enclosed the certificate in a letter addressed to Crohn at Kansas City and mailed the letter. Crohn received it at Kansas City, kept the certificate and continued as a member of the order in good standing to the date of his death, paying all dues and assessments levied against him.

The use of the mails for the delivery of the policy into the hand of Crohn was the voluntary act of defendant and was not in obedience to any instructions or request from Crohn nor was it in response to any use by him of that agency of communication. Had it so elected defendant could have waited until Crohn came to Hutchinson to receive the certificate. It decided not to wait but to send the certificate to him at Kansas City and it had the choice of a number of different agencies for the transmission of the certificate such as the mails, express companies or messengers. Had the local secretary at Hutchinson, who was charged with the duty of delivering the certificate, carried it to Kansas City himself and there delivered it into the hand of Crohn, there can be no question but that he would have been the agent of defendant performing an act within the scope of his agency, and that the place of delivery would have been Kansas City and not Hutchinson nor Columbus, Ohio. If the actual delivery of the certificate was made by the terms of the application a condition precedent to the creation of liability on the part of defendant as an insurer, the contract of insurance was not complete until such delivery and if the delivery occurred in this State, the certificate would be a Missouri contract. [Horton v. Ins. Co., 151 Mo. l. c, 620.]

But it is argued by defendant that the delivery of the certificate was not essential to the completion of the contract of insurance. The rule recognized in this State is that actual delivery of the policy to the insured is not essential to the validity of a contract of life insurance unless expressly made so by the terms of the contract. If this were a case where an unconditional application for insurance had been unconditionally accepted by defendant at its home office and the certificate had been executed and sent to the local secretary for delivery to Crohn, we would hold that the completion of the contract was not dependent on the delivery of the certificate and that the contract became complete and binding on the acceptance of the risk which could be expressed in other ways than by a delivery of the certificate. This rule is too well settled and familiar to require the citation of authorities.

But it is equally well settled that the parties may stipulate that the contract shall not become binding until the manual delivery of the policy to the insured. They may agree that the final act to give validity to the contract shall be its actual delivery and when they do the courts will give effect to such agreement. "The law is that the place where the final act occurs which makes it a binding contract, is the place of contract, and where an insurance contract is not to become completed or fully executed until a payment of a premium and delivery, the place of payment and delivery will be the place of the contract, even though the contract should state the place of the insurer's residence should be deemed the place of contract." [Umberger v. M. B. A., 162 Mo. App. 141; Cravens v. Insurance Co., 148 Mo. 583.]

"It is true that a binding contract of insurance may be made by the making and acceptance of a proposition without the issuance of a policy, the policy not being the contract but only the written statement thereof but it is also true that the competency of the

parties to expressly stipulate when it (the insurance contract) shall become operative cannot be ques-, tioned." [M. W. A. v. Owens, 130 S. W. (Tex.) l. c. 862; Gallop v. Royal Neighbors, 150 S. W. 1118, 167 Mo. App. 85; Kirk v. W. O. W., 169 Mo. App. 449.

Turning to the laws of the society which were made a part of the proposal of the applicant we find they expressly provide that the contract of insurance should not become binding until the delivery of the certificate to the applicant. What other reasonable construction could be given the stipulation that "The right of indemnity . . . is conditional on the issuance to him of a certificate of membership by the supreme executive committee?" The term "issuance to him" must be given its usual significance to persons of ordinary intelligence and that significance was to send forth the certificate and put it in the hand of Crohn. [Perkins County v. Graff, 114 Fed. l. c. 444; Brownell v. Greenwich, 4 L. R. A. (N. Y.) l. c. 691.] Was the certificate issued to Crohn as long as it remained in the possession of defendant subject to be recalled by the executive committee? We answer the question in the negative. Let us suppose that after the local secretary had mailed the certificate to Crohn he had received a telegram from the committee cancelling and recalling it; would not this act, if communicated to Crohn before he received the letter, have had the effect of preventing the creation of a contract of insurance, in view of the provisions that, in effect, made the manual delivery of the certificate a condition precedent to a contract of indemnity? We hold that it would and in this view we find sufficient support in the following excerpt from the decision of the Supreme Court in Horton v. Ins. Co., 151 Mo. l. c. 619:

"The law in regard to the making of contracts by mail is that when a letter containing a proposition is forwarded by mail to be accepted or declined in like manner, if the person to whom it is addressed un-

conditionally accepts the proposition by letter, and mails it to the person from whom the proposition came, the contract is complete as soon as the letter of acceptance is deposited in the mail. [Parsons on Contracts (7 Ed.), star page 484.] The theory of the law is that the party who makes the proposition by mail and thus invites response by the same medium makes the mail his agent and when his correspondent places the acceptance in the mail it is the same in effect as placing it in the hands of him who invited it by that means. But in such case the letter of acceptance must pass out of the writer's control, and be addressed to the person who made the proposition, so that he is entitled to receive it from the mail. This does not change the rule of law that an acceptance to be binding must be communicated to the proposer; it only makes the deposit of the letter of acceptance, in the mail, under those circumstances, constructive notice to him who made the proposal that his offer has been accepted. Until there is an actual or constructive notice to the other party of the acceptance it is still in the breast of the acceptor and may be revoked before it becomes binding. [Bruner v. Wheaton, 46 Mo. 363; Lungstrass v. Ins. Co., 48 Mo. 201.]

"Actual delivery of the policy was not essential to the consummation of the contract, if the company had chosen to signify to the insured by other means that his application was accepted. But the company did not choose to do so; the first intimation that the insured had that his application was accepted, was the delivery to him of the policy.

"When the company resolved to accept the application it kept that resolution within its own breast, and took the precaution to send the policy to its own agent in Missouri to be delivered on condition of payment of the first premium, and withheld from the insured notice of its acceptance. This was simply a resolution within itself, with no outward indication, and

within its own power to reconsider and change. It was in the power of the company to recall the policy at any time while it was yet in the hands of its own agents, and if the death of the insured had occurred between the time of mailing the policy in New York and the time of its delivery to him at Hume in this State, the company might have countermanded the order for its delivery and escaped liability, unless there was something else in the case in reference to the agent's authority to give such receipt, and in reference to the payment of the $304, than appears in this record.

"We conclude, therefore, that the contract of insurance was not consummated in New York because it appears from this record that the agent at Hume had no authority to bind the company to a contract of insurance to date from the acceptance of the application in New York, before the delivery of the policy, and because the evidence does not show that the first premium called for by the policy was paid in advance when the application was made, and because the evidence shows that the company treated it as a transaction to be consummated upon the delivery of the policy and payment of the premium in Missouri, and because the insured had no notice that his application had been accepted until the policy was delivered to him.

"Under these conditions the contract was not complete until the policy was delivered in this State and therefore it is a Missouri contract."

The mail service of the United States was the agency selected by defendant for the delivery of the certificate; the contract of insurance did not become complete until Crohn received the certificate and since the place of delivery was in this State, it follows that the defense of suicide is not available to defendant.

Much reliance is placed by counsel for defendant on the cases of Rhodus v. Insurance Co., 156 Mo.

App. 281 and Norman v. U. C. T., 163 Mo. App. 175. We think the views we have expressed sufficiently disclose the vital difference between those cases and the one in hand and it is not necessary for us to go further into the subject. The judgment is for the right party and is affirmed. All concur.