SALLIE D. PIERCE, by her Guardian and Curator, JOSEPH DURFEE, Respondent, v. NEW YORK LIFE INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, October 6, 1913.

1. **LIFE INSURANCE: Terms of Application: Beneficiary.** The plaintiff, a minor, brought suit by next friend on two policies of ordinary life insurance issued to her mother by the defendant. The mother died and defendant refused to pay the policies on the ground that neither policy had been delivered to the assured and that the minor plaintiff was not the beneficiary of either policy. *Held*, that the plaintiff properly recovered for the value of the two policies.

2. ————: ————: ————: **Waiver.** A party has the right in an application for insurance to stipulate when and under what conditions the contract shall go into effect, and where the application provides that the insurer shall not become liable as such until the payment of the initial premium and the delivery of the policy to the assured, such provision will be enforced and no recovery will be allowed against the company if the death of the applicant occurs while such conditions remain unperformed. But a stipulation of this character being

primarily for the benefit of the company may be waived by the company either by subsequent express agreement or by the conduct of the parties bespeaking a mutual intention to disregard it and to treat it as inoperative.

3. ————: ————: ————: **Death of Applicant.** There is no contract of insurance if the party insured reserved the right to accept or reject the policies when they were presented to him and he dies before he exercised that option.

4. ————: ————: **Change of Beneficiaries.** Where policies of insurance erroneously designate a beneficiary and the parties to the contracts agree to a change of beneficiary before the delivery of the policy and payment of the premiums, for the purpose of correcting the error, there is not a technical change of beneficiaries within the meaning of the terms of the policy but merely the designation of the beneficiary named in the applicant's proposal.

Appeal from Atchison Circuit Court.—*Hon. Wm. C. Ellison,* Judge.

AFFIRMED.

*Culver & Phillip* for appellant.

*Hunt, Bailey & Hunt* for respondent.

JOHNSON, J.—This is an action on two policies of ordinary life insurance alleged to have been issued and delivered by defendant to Alice R. Pierce for the benefit of plaintiff, her minor daughter.

The defenses of present concern are, first, that neither policy was delivered to the assured and, second, that plaintiff was not the beneficiary of either policy. A trial of the issues thus raised resulted in a verdict for plaintiff on both policies. Defendant appealed and argues that the court should have peremptorily instructed the jury to find in its favor.

On April 22, 1911, Alice R. Pierce, a widow living on a farm near Rock Port, made written application to defendant for an ordinary life policy for $2000. The application was procured by W. W. Gallaher, a solicit-

ing agent employed by and operating through defend-ant's branch office at St. Joseph, and contained the following agreements:

"1. That the insurance hereby applied for shall not take effect unless the first premium is paid and the policy delivered to and received by me during my lifetime, and that unless otherwise agreed in writing, the policy shall then relate back to and take effect as of the date of this application.

"2. That any payment on account of the first premium before delivery of the policy to me shall be binding on the company only in accordance with the company's receipt therefor on the coupon receipt form duly filled out and detached from this application, which is the only authorized form of receipt for such payment.

"3. That the agent taking this application has no authority to make, modify or discharge contracts, or to waive any of the company's rights or requirements."

Gallaher's contract of employment also contained the following restrictions upon his authority as a soliciting agent: "It is agreed that said second party (Gallaher) shall have no authority for or on behalf of said first party to accept risks of any kind, to make, modify or discharge contracts, to extend the time for paying any premium, to bind the company by any statement, promise, or representation, to waive forfeitures or any of the company's rights or customary requirements, to name any extra premium for extra risks or privileges, to receive any moneys due or to become due to said first party except upon applications obtained through or by him, and then only in exchange for the coupon receipt attached to the application corresponding in date and number with the application, or upon policies or renewal receipts signed by

the president, a vice president, a secretary, or the treasurer, sent to him by the first party for collection.''

The application was forwarded by Gallaher to defendant's home office in New York through the St. Joseph office, with the request that an additional policy of $3000 be issued, though Mrs. Pierce had applied for only one policy of $2000.  Defendant, in response, issued and sent two endowment policies to the St. Joseph office, instead of policies on the ordinary life plan.  These policies were returned without an effort being made to deliver them and thereupon defendant sent two policies for $2000 and $3000 respectively in which the estate of the assured was named as the beneficiary.  Gallaher took these policies to Rock Port and left them with Doctor W. R. Strickland who was the president of a bank, defendant's examining physician at Rock Port and Mrs. Pierce's family physician.  The instructions to the doctor were to collect the premium on one or both of the policies and to deliver them, or the one on which she paid the premium.

The policies contained a multitude of provisions and agreements, among them the following:  "7. Change of Beneficiary—When the right of revocation has been reserved, or in case of the death of any beneficiary under either revocable or irrevocable designation, the insured, if there be no existing assignment of the policy made as herein provided, may, while the policy is in force, designate a new beneficiary, with or without reserving right of revocation, by filing written notice thereof at the home office of the company accompanied by the policy for suitable indorsement thereon.  Such change shall take effect when endorsed on the policy by the company and not before.  If any beneficiary shall die before the insured, the interest of such beneficiary shall vest in the insured.''

The policies were not delivered by Doctor Strickland and on June 13, 1911, Gallaher went to Rock

Port, obtained the policies and had an interview with Mrs. Pierce at Strickland's office in the bank. At first she declined to accept either policy. One of her objections was that she desired plaintiff, instead of her estate, to be her beneficiary, and another was that she did not have money enough in bank to pay the premiums on both policies. The first objection was removed on the agent's promise to return the policies to the company for cancellation and to have new ones issued payable to plaintiff. The agent stated, however, that he could not do this without the payment of the premiums on both policies. To meet the second objection, Dr. Strickland, who heard parts of the conversation, offered to pay a debt he owed Mrs. Pierce, which would give her sufficient funds to pay the premiums. Thereupon it was agreed, so Gallaher and the doctor testify, that Mrs. Pierce would pay the premiums at once, by check to Gallaher, that he would return the policies to defendant for cancellation, that new policies payable to plaintiff would be issued and delivered to Mrs. Pierce, and that she should have the option at that time of accepting either or both of the policies. In case she decided not to take either, Gallaher was to return her check and if she refused but one, the premium for that policy was to be refunded. We quote from Gallaher's testimony:

"She took the ground that she didn't have the money in the bank, and just how the matter came to be referred to Dr. Strickland I couldn't say, but at any rate he assured Mrs. Pierce that he would protect the check for the amount, but in that conversation Mrs. Pierce said again and again that the boys didn't want her to take the insurance and that she didn't know whether she would take it or not, and if she paid any money she wanted to be sure that she could accept one or the other, or neither of the policies, and that in case she accepted one the money advanced for the other should be returned, and if she accepted neither

all the money should be returned, and that is the point where I possibly called Dr. Strickland and said 'Mrs. Pierce, you don't know me, but Dr. Strickland does, and think he will vouch for my honesty in doing that.' I assured Mrs. Pierce that the money was simply paid to me in trust until she had accepted or declined the policies payable to Sallie D., her daughter, and I had her consent to secure such policies, and my intention at the time was—my understanding was that those policies made payable to the estate would be cancelled and entirely new policies would be made."

Apparently Mrs. Pierce entertained some idea that defendant would not recognize the oral promises of the agent as binding upon it and she asked Strickland if it would be safe for her to pay the premiums to Gallaher and allow him to retain the policies. Strickland answered that "Mr. Gallaher had been superintendent of schools here for a couple of years since I had lived in Rock Port and that I had known him off and on, ever since, that I regarded him as personally responsible and reliable, besides, he was under bond to the New York Life, so that she would either get her money back or the policies."

Thus reassured, Mrs. Pierce delivered to Gallaher her check for $324.57, the amount of both premiums, and Gallaher returned to St. Joseph with the money and the policies. The check was cashed and the proceeds paid over to defendant. The policies were not returned to the home office for cancellation but were kept by Gallaher almost two weeks. Defendant's manager at St. Joseph decided that instead of returning them for cancellation he would have Mrs. Pierce make application for a change of beneficiaries and after such change had been indorsed on the existing policies at the home office and they were returned, he would cause them to be delivered to Mrs. Pierce. Accordingly Gallaher went to Rock Port on June 26th and procured

from Mrs. Pierce the following written application for a change of beneficiary in the two policies:

"June 26, 1911.     New York Life Insurance Co.,
346-348 Broadway, N. Y.

"The beneficiary under the accompanying policy, No. 427, 486-7, is hereby changed in accordance with the change of beneficiary clause thereof, to Sallie D. Pierce, daughter, such change to take effect only when indorsed on said policy at the home office. The policy is not now assigned."

Mrs. Pierce died July 3d, one week after signing the above application. On July 5th, the St. Joseph manager, not knowing of her death, forwarded the application and policies to the home office where they were received July 7th. On July 10th, the change was indorsed on both policies and they were returned to St. Joseph. In the meantime, the St. Joseph office received news of the death of Mrs. Pierce and the policies were sent back to the home office. Proofs of loss were made by plaintiff but the claim was rejected by defendant. As soon as defendant learned of the death of Mrs. Pierce it tendered $334.25 to the administrator of her estate and after this suit was brought, made a similar tender into court.

First we shall dispose of the questions discussed in connection with the first proposition of counsel for defendant that no contract of insurance had been entered into by defendant at the time of the death of Mrs. Pierce. The foundation of the argument is the stipulation in the written application "that the insurance hereby applied for shall not take effect unless the first premium is paid and the policy delivered to and received by me during my lifetime." While it is true that a binding contract of insurance may arise from the acceptance by the insurer of a proposition from the applicant and without the issuance of a policy, the

policy not being the contract but only the written statement thereof, the courts of this State have uniformly recognized the right of the parties to an application for insurance to stipulate when and under what conditions the contract shall go into effect and where the application provides that the insurer shall not become liable as such until the payment of the initial premium and the delivery of the policy to the assured such provision will be enforced and no recovery will be allowed against the company if the death of the applicant occurs while such conditions remain unperformed. [Kilcullen v. Ins. Co., 108 Mo. App. 61; Bell v. Ins. Co., 166 Mo. App. 390; Rhodus v. Life Ins. Co., 156 Mo. App. 281; Gallop v. Royal Neighbors, 167 Mo. App. 85; Crohn v. Ins. Co., 156 S. W. 472; 170 Mo. App. 273.] But a stipulation of this character being primarily for the benefit of the company may be waived by the company (Rhodus v. Life Ins. Co., supra) either by subsequent express agreement or by the conduct of the parties bespeaking a mutual intention to disregard it and to treat it as inoperative.

Gallaher had no authority to sign, countersign, or issue policies. He was an agent employed by defendant to solicit insurance and collect premiums on policies issued and delivered pursuant to his efforts. He had no authority to enter into contracts with applicants different from that expressed in the printed applications and policies nor to waive performance of any of the terms and conditions therein stated and imposed. Mrs. Pierce was informed by the application of these restrictions on his authority and appears, from the testimony of defendant's witnesses, to have understood them. Gallaher assured her in the conversation just preceding the payment of the premiums that he would hold the money in trust until the new policies were issued and she had exercised her option to reject one or both of them and she seems to have acted in the belief that if he should break this agreement

and turn the money over to the company, she would
have no recourse against the company, but would be
compelled to take both policies. Consequently she
made careful inquiries of Strickland (her physician in
whom she had great confidence) about Gallaher, and
parted with her money only on the assurance that
he was a man in whom she could safely repose confidence.

These facts distinguish this case from those cited
by defendant in support of the contention that "there
was no contract of insurance if Mrs. Pierce reserved
the right to accept or reject the policies when they
were presented to her, and she died before she exercised that option." [Dickerson v. Ins. Co., 52 S. W.
(Ky.) 825; Rogers v. Ins. Co., 41 Conn. 97; Hubbard
v. Ins. Co., 105 N. W. (Ia.) 332; Watkins v. Bowers,
119 Mass. 383; Whiting v. Ins. Co., 129 Mass. 240.]

If Mrs. Pierce had paid the money to the agent
under circumstances that would have led one in her
place to believe that the acceptance of the money by
the principal would be a ratification of the agent's
promises, she, as well as the principal would be bound
to give effect to such promises, but as we have said,
the proof shows very clearly that in making the agreement giving her the option to refuse to take one or
both of the policies she knew the agent was acting beyond the scope of his actual authority and dealt with
him, after being reasured by Strickland, not as the
representative of defendant, but as the party on whom
she relied for the performance of the special promise.
As was intimated by the judge at the trial, the circumstances under which she paid the premiums would
have precluded her from maintaining an action against
defendant for their recovery had she elected to reject
the policies and Gallaher had refused to refund the
money she had paid to him. A recovery in such case
could have been successfully resisted on the ground
that the application and policies afforded her no such

option, that the promise of the agent was unauthorized and that she had actual knowledge of his lack of authority.

So far as defendant was concerned the payment of the premium was unconditional and not subject to the option agreement. When this payment was made the agent had the policies in his possession and the only thing that prevented their actual delivery to Mrs. Pierce was her decision to have the beneficiary changed before their delivery. At this time no contract of insurance had been entered into and, therefore, no one had acquired any vested interest as a beneficiary. The plan of the agent to return the policies for cancellation and reissue was feasible and could have been carried out without the infringement of any vested interest and until the new policies had been issued and delivered to Mrs. Pierce, the contract of insurance would not have become existent. But this plan was abandoned by defendant for another which treated the existing policies as having been already delivered to Mrs. Pierce and accepted by her. Obviously the application for a change of beneficiary was made by her as being in pursuance of a provision of an existing contract and since defendant in requesting her to make such application elected to treat the contract as completed, it will not be heard (after the action on the request and the loss occurred), to take the opposite position and say that the contract still was inchoate at the time of her death. Clearly in treating the policies as delivered defendant waived strict compliance with the provisions for actual delivery as a condition precedent to the creation of a valid contract of insurance. The insurance went into force at the time Mrs. Pierce made written application to change the beneficiary.

Passing to the second proposition of defendant we think plaintiff is the beneficiary of the policies. The provision that a change of beneficiary shall not

become operative until indorsed at the home office on the policy is for the protection of the company and would be enforced were this an instance where beneficiary rights had vested prior to the application for a change. Here the parties had agreed on the change before the delivery of the policies, the payment of the premiums and, of course, before a contract of insurance had been created. The creditors and heirs at law of the applicant had acquired no interest and the change of beneficiary applied for by Mrs. Pierce was made merely for the purpose of correcting an error in the policies, to bring them into conformity with the proposal for insurance. That was not a technical change of beneficiaries within the meaning of the terms of the policies but—in effect, was merely the designation of a beneficiary by the applicant for insurance in her proposal.

The judgment is affirmed. All concur.