ROSE EDWARDS, Respondent v. BUSINESS MEN'S ACCIDENT ASSOCIATION OF AMERICA, appellant.

Springfield Court of Appeals, March 27, 1920.

1. **INSURANCE: Application Making Payment of Premium Condition to Taking Effect of Policy, Held Waived.** Provision of application for accident policy making payment of premium a condition precedent to the taking effect of the policy was waived by agent's agreement with insured that the taking effect of the policy was not to await payment of premium, but that premium was to be paid when called for by the local agent, and by the insurer's charging the local agent with the portion of the premiums due it after deducting his commission on issuing the policy.

2. ———: **Actual Delivery of Policy Not Generally Necessary to Complete Contract.** Generally, the actual delivery of a policy is not necessary to complete the contract; the contract being consummated on the acceptance of the application unless otherwise provided by contract.

3. ———: **Application, Issuance of Policy, and Arrangement as to Payment of Premium Complete Contract.** Where the payment of the premium has been made or arranged for and the application for the policy submitted, the acceptance of such proposal, and issuance of the policy, complete the contract.

(102)

Edwards v. Business Men's Acc. Assn. of Am.

4. ——: **Deposit of Policy in Mails Constitutes Delivery to Insured.** The deposit of the policy in the mails addressed to the insured is a delivery to him, the postal authorities being considered the agents of the insured for the transmission of the policy.

5. ——: **Actual Delivery of Policy Held not Condition Precedent to Completion of Contract.** Application for accident policy, given insured a stipulated period of time in which to reject the policy, did not make an actual delivery of the policy at insured's place of address a condition precedent to its becoming a completed contract.

6. **CONTRACTS: Construed According to Intention of parties.** Contracts will be construed according to the intention of the parties.

7. ——: **Party to Contract May Waive Privilege for His Benefit.** Generally, a party to a contract cannot avoid liability because the other party has not availed himself of a privilege therein for his benefit.

8. **INSURANCE:· Proviction Requiring Actual Delivery of Poiicy Valid.** A provision that a poilty could not be given effect until actual delivery will be held valid.

9. ——: **Accident Policy Held to Have Taken Effect on Delivery to Mails.** Under application for accident policy given insured three days after receipt of policy in which to examine and reject it, without requiring that his assent be indicated in any particular way, insured's statement to agent, upon submission of application, that he had examined and was satisfied with the sample policy, would accept the policy without further examination, and had given directions to his clerk to pay the premium to the local agent on demand, was a waiver of such provision of the application, so that the contract was complete upon delivery of policy to the mails directed to insured's address.

10. **EVIDENCE: Waiver of Condition Precedent to Contract May be Shown by Parol.** Waiver of a condition precedent to the taking effect of a written contract may be shown by parol, such parol proof not constituting the varying or contradicting of the terms of a written contract, since without the waiver there is no contract.

11. ——: **Rule as to Varying Written Contract Not Applicable to Proof of Waiver.** The rule against contradicting or varying the terms of a written contract by parol does not apply to showing a waiver of a provision therein by the party for whose benefit it is made.

Appeal from Circuit Court of Jasper County.—*Hon. J. D. Perkins*, Judge.

AFFIRMED.

205 App.—2

*J. W. Halliburton & Son* and *Solon T. Gilmore* for appellant.

*H. S. Miller* for respondent.

STURGIS, P. J.—Plaintiff's husband lost his life by reason of an automobile accident in which the automobile in which he was riding overturned inflicting injuries from which he died August 1, 1918. This suit is on an accident policy on his life payable to plaintiff and the petition alleges in conventional form that the policy was in force at the time of his death. The defendant denies the validity of the policy sued on in that such policy was not delivered to and accepted by the insured so as to make it a complete and binding contract before the said insured received the injury resulting in his death a few days later. The attorneys in the case have with commendable candor narrowed the case to this one issue and have left the facts practically conceded. These facts are that the insured was about to leave his home at Joplin, Missouri, for a trip to the oil fields in Oklahoma and decided to take an accident policy in defendant company. The defendant's agent met the insured at the latter's office in Joplin on July 26, 1918, and the insured then and there signed the application for the accident policy for $5,000, in case of his accidental death. This application provides that the policy issued thereon "is to take effect when received and accepted by the applicant." It also contains this question and answer: "Do you agree that upon receipt of the policy, you will examine it, and, if satisfactory, accept it, and if not satisfactory, you will return it within three days in order that the amount paid herewith may be returned to you? A. Yes." The defendant's home office is and was in Kansas City and the application etc., were forwarded there to be accepted or rejected by defendant. The defendant received the application on July 27 or 28, ac-

cepted same and issued the policy sued on dated July 29 and mailed same on the evening of July 30 to the insured at his office address in Joplin. The policy reached the insured's office in due course of mail at about eight o'clock in the morning of July 31st and was opened by the insured's office clerk, he having then left the city. The insured had been absent from Joplin about two or three days and met with the accident causing his death about seven o'clock in the morning of July 31st—about an hour before the office clerk received the policy in the morning mail. This clerk however did not learn of insured's accident and injury till an hour or more still later.

It was shown that when the insured and defendant's agent met at the insured's office on July 26, when and where the application was signed, the agent gave insured a sample policy such as defendant issued and which is conceded to be the same as the one later issued on such application except filling out the necessary blanks as to the amount, name of insured and beneficiary etc. The insured examined the sample policy before signing the application. At the trial the plaintiff was allowed to prove by the insured's office secretary, who was present, that, in the presence of the defendant's agent taking the application, the insured examined the sample policy, signed the application and directed the said secretary that when the policy came to pay the premium on it; that he said he was going away and probably would be away when the policy arrived and for her to pay the premium on the policy to defendant's said agent; for her to pay a year's premium and told such agent to call for it; that he gave no direction to her as to examining or approving the policy, but merely directed her to pay the premium; that he said he was taking the policy the defendant's agent was selling; that he gave her no instructions as to inspecting the policy but merely to pay for it. This office clerk further testified that she paid the premium on this policy to defendant's local agent on August 6, 1918, after

the insured's death; that such agent then called for it and that was the first time she had seen him since the application was signed. The defendant afterwards tendered back this premium and kept the tender good at the trial. On cross examination the witness testified that she did not know at what time the policy was delivered by mail at the office; that it was in the mail in the morning when she got there and that she stayed in the office in the evening until mail delivereries were made; that usually the morning delivery was made when she got to the office; that she could not say whether she had ever been there when it was delivered or not; that after Mr. Edwards signed the application he put the specimen policy in the drawer of her desk; that Mr. Hatch, the local agent, gave Mr. Edwards a specimen policy . . . That she did not examine the specimen policy when the policy itself came; that she did not know whether Mr. Hatch told Mr. Edwards that when the policy came he could check it with the specimen policy; that Mr. Edwards did not tell her to see if the policy was like the specimen; that no other reason was ever suggested to her; that when the policy came from the company, she expected to pay for it regardless of how it was made out. Q. It made no difference whether it was written to Charles W. Edwards or somebody else? A. Mr. Edwards instructed me to pay a years premium on that policy. The witness further testified that she opened the envelope probably at 8:20 or 8:25 a. m. and took the policy out to see if it had been properly signed by the agent; that she did not look to see whether it was written to Charles W. Edwards or if Mrs. Edwards was named as beneficiary; that she simply looked to see if it was properly signed. She didn't look to see if it was for $5,000 or $500. Q. After you saw it was signed, did you conclude then you would pay for it when they came and asked for it? A. I had already been instructed to pay for it. Q. If it hadn't been

signed, would you have paid for it? objection made and sustained.

On these facts the question' for decision is whether or not the policy sued on was a completed contract at the time the insured received his fatal injury. The defendant in its brief tersely states the proposition thus: "Edwards, the insured, in his written application consented that this policy should not be effected *until it reached him;* the defendant issued it upon that understanding; upon the question whether the policy became effective at that time or upon the day before (when the policy was issued and delivered to the United States mail) depends the answer to the question whether defendant owes plaintiff $5,000 or nothing." This statement of the issue to be decided tacitly concedes, and rightly so, that the payment of the premium, the most important part of the contract from defendant's standpoint, was not a condition precedent to the taking effect of the policy. The application, in the clause heretofore quoted, proceeds on the theory of a cash payment of the premium in advance, in that it requires a prompt acceptance of the policy "in order that the amount paid herewith may be returned." The evidence shows that the taking effect of the policy was not to await payment of the premium but that same was to be paid when called for by the local agent; and it was agreed at the trial that on issuing the policy the defendant charged to the local agent the portion of the premium due it after deducting his commission. This provision of the insurance contract was solely for the defendant's advantage and could be and was waived. [Malone v. State Life Ins. Co., 213 S. W. 877.] "Such a waiver is usually considered to be established by a delivery of the policy under an express or implied agreement for credit, and that credit was given is usually implied from a delivery of the policy without requiring payment." [14 R. C. L., sec. 130, p. 958; Prudential Ins. Co. v. Sullivan, 59 N. E. 873.]

It also seems to be conceded that delivery of the policy to the insured in person is not required by this contract and if so no examination of the written policy or express approval of same was required to make it effective. There was nothing requiring insured to in any way notify defendant of his acceptance. He promised in his application that if not satisfactory he would return it within three days; that is, give notice of its rejection. The defendant claims no more than that the policy was not to be effective till it "reached the insured" which evidently means delivery at his office by the United States mail. The fact that the insured was absent from the city and would be for more than the three day limit for rejecting it and had instructed no one to examine and approve the policy for him, was not material to defendant. It was only concerned with its rejection. As we understand defendant it concedes that if the insured had received accidental injury the next day or at any time after the policy reached the insured, that is, was delivered by the postman at his office, that being the address given for the purpose of mailing the policy, then defendant would be liable. Suppose neither the insured nor anyone for him had been at the office during the three days given for examination and rejection of the policy, or for any cause the envelope covering such policy had not been broken, and on the fourth or fifth day the injury had occurred; we take it that defendant would concede liability. Certainly defendant could not defend on the ground that the insured had neglected to avail himself of the privilege of examining or rejecting the policy. The wording of this privilege is evidently intended to impress the insured that he should not reject the policy without at least examining it. Except as preliminary to rejecting it the examination of the policy by the insured was of no importance to defendant.

The question therefore narrows itself to the necessity of the delivery of the policy to the insured by mail, rather than to the mail for him, prior to his injury. Ac-

tual delivery of a policy is not generally necessary to complete the contract. Contracts are generally consummated when a definite proposition is made and accepted as made and in insurance law the rule is that "on the acceptance of the application the contract is consummated." [14 R. C. L. 70, p. 894.] Delivery of the written policy, though such is contemplated by the parties, is not essential unless made so by the contract. Where the payment of the premium has been made or arranged for and the application for the policy submitted, then the acceptance of such proposal and issuance of the policy completes the contract. [14 R. C. L. 76, p. 898; Keim v. Ins. Co., 42 Mo. 38; Baldwin v. Chouteau Ins. Co., 56 Mo. 151.] The Supreme Court considered this question in State ex rel. v. Robertson, 191 S. W. 989, 992, where the policy issued on the application was not delivered, if at all, till after the insured's death. The court there said: "Had the New York officers of the company approved the entire application, as it approved Kempf as an insurable risk then unquestionably he would have been insured from that date, although ill health may have overtaken him prior to the issuance of the policy. In other words, his contract of insurance was conditional, depending upon the company's acceptance of him as an insurable risk, and its approval of his application for the insurance as presented to it by him. The actual issuance of the policy, an ordinary life policy, cuts but little figure in the case, for the reason that, if Kempf had no previous knowledge of its terms, they were certainly made known to him by the provisions of his application for the insurance." The court, however, held in that case that no contract was consummated because the application was not accepted as made but a new proposition was made by the insurer which was never accepted by the insured. In the present case there is no question but that defendant accepted the application as made and issued the policy in exact accordance therewith.

It also the general rule of law that deposit of the policy in the mails addressed to the insured is a delivery to him, the postal authorities being considered the agents of the insured for the transmission of the policy to him. [25 Cyc. 718; 14 R. C. L. 76, p. 899; Crawford v. North American Union, 193 Mo. App. 443, 448, 182 S. W. 1043.]

Conceding that the application constituted part of the insurance contract, is there anything therein making an actual delivery of the policy at the insured's place of address a condition precedent to its becoming a completed contract? Such, we think, was not the intention of the parties—the cardinal rule for interpreting contacts. In its prosecution of its business generally, the defendant, after it had approved the application and issued the policy, was interested in having the same accepted. That was its business. The form of the question heretofore quoted shows that, while willing to have the insured examine the policy and reject same for cause, defendant was exacting a promise that this would be done, if at all, promptly. It is apparent that while insured is given three days within which to do this, he is not required to take that time or any portion thereof. He certainly could, on receiving the policy, immediately wire an acceptance without examining it. This is because this privilege was for his benefit, and we think it is or ought to be a general rule of the law of contracts that one party to a contract cannot avoid liability because the other party has not vailed himself of a privilege therein for his benefit. [Broom's Legal Maxims, 545.] Whether a provision of a contract is a privilege granted to the other, of which he may or may not avail himself at his pleasure, must be determined by the facts as they then exist and as the parties look at them at the time of negotiating the contract and not by subsequent events. Of course, it would have been better for defendant in this instance for the insured to have rejected this policy but that would be true had the accident happened six months later. In the general prosecution of its business, however, no one can say that it was not to defend-

ant's interest to have policies, issued on applications approved by it, accepted and go into effect.

We do not deny that parties have the right to make their own contract and had this contract provided that this policy should not go into effect until actually delivered to insured, we would uphold such provision. Such are the cases cited by defendant where it is provided that the policy shall not be effective till delivered to the insured in good health. [Bell v. Missouri State Life Ins. Co., 166 Mo. App. 390, 149 S. W. 33; Pierce v. Ins. Co., 174 Mo. App. 383, 160 S. W. 40; Yount v. Ins. Co., 179 S. W. 749; Kohen v. Ins. Co., 28 Fed. 705.] In these cases the provisions mentioned were inserted by the insure for its benefit in guarding against concealed or unknown diseases or infirmities of the insured. It is not so here. This is a different kind of insurance and there is a wide difference between a condition that a contract shall not be effective till a certain time or on a certain event and the grant of a restricted right to reject the policy. The defendant, we think, will not contend that the party in whose favor a contract provision is made may not waive the same. There is abundant authority so holding. [Broom's Legal Maxims, 545; Joyce on Insurance, sec. 66e; Riley v. Ins. Co., 117 Mo. App. 229; Rudd v. Ins. Co., 120 Mo. App. 1; Rhodus v. Life Ins. Co., 156 Mo. App. 281, 137 S. W. 907.] In the present case there was a maximum but no minimum period for the insured's rejection; nor was he required to indicate his assent in any way. We see no reason, therefore, why he could not assent to same unconditionally at the time of making the application. [Going v. Ins. Co., 36 S. E. 556, 560.] Had he written on the application or accompanied same with a letter to defendant saying that he had examined the sample policy, was satisfied with same, was about to leave his home for a time, did not care to examine the policy further but would accept it and had given instructions to his clerk or banker to pay the premium to the local agent on demand, could there be any doubt as to this being a waiver? Yet this is exactly

what·the insured said to the local agent and his office clerk. The waiver did not need to be in writing or be communicated to defendant.

While there is a seeming conflict between the rule that a written contract cannot be varied, contradicted or added to by parol evidence and the rule that a waiver of its terms may be shown by parol, yet the latter rule is well established as an exception to the former. [Paddock-Hawley Iron Co. v. Ins. Co., 118 Mo. App. 85, 96, 93 S. W. 358. See note to Haapa v. Met. Life Ins. Co., 16 L. R. A. (N. S.) 1166, 1186, 1198; Rudd v. Ins. Co., 120 Mo. App. 1, 10, 96 S. W. 237; Pino v. Ins. Co., 19 La. Ann. 214.] Strictly speaking proof of waiver of a condition precedent to a contract taking effect is not contradicting or varying the terms of a written contract with·out the waiver there is no contract. The waiver of such condition precedent is merely removing an obstacle in the pathway of a contract (?) becoming a contract just as performance of such condition accomplishes such result. And in any event the rule against contradicting or varying written contracts by parol does not apply to·showing a waiver of a provision therein by the party for whose benefit it is made. In Knarston v. Manhattan Life Ins. Co. (Cal.), 73 Pac. 740, the court said: " 'The law will not compel a man to insist upon any benefit or advantage secured to him individually. Hence it was the privilege of the insurers in this case, if they elected so to do, to waive the condition making the actual payment of the premium a condition precedent to the binding efficacy of any insurance, as it was a condition inserted for their benefit, and in which they alone were interested. This waiver may be established by evidence of an express waiver, or by circumstances from which such waiver may be inferred. . . . Proof of this waiver did not tend to vary the terms of the contract. It was given to show a waiver of a condition precedent to the contract becoming valid as such. It was no more a violation of the rule prohibiting parol evidence to vary or contradict a written contract that would have been evidence by parol of the

actual performance of the conditions.' [Goit v. Nat. Pro. Ins. Co., 25 Barb. (N. Y.) 191.] If the contention of appellant must be sustained, its practical effect would be to hold that no act, or conduct, or agreement upon the part of one for whose benefit the right of forfeiture existed, resting in parol, would constitute a waiver of it. This is not the law.''

The instruction given at defendant's instance to find for defendant if the insured directed his office clerk to receive the policy and accept it if it was like the specimen policy, was too favorable to defendant. The insured could fully and absolutely accept the policy which defendant was offering by its agent, the full terms of which were shown by the specimen policy, and yet leave it to the clerk to see that it was signed and that it conformed to the proposed terms. The defendant was required to accept the application as made and issue a policy conformable thereto or there was no contract. That there was a complete contract in this case is because defendant did issue a policy signed and conformable to the application of which the specimen policy may be said to be a part. Unless this was done there was no contract for the insured to accept or reject. One can make a complete contract for the purchase of a particular horse, the title passing at once, but to be paid for when delivered to him at a certain place, and it would not be held to postpone the taking effect of such contract for the purchaser to direct his servant to look at the horse before paying for same to ascertain if the horse he bought was the one delivered. This also answers the contention that the insured's office clerk was not allowed to say whether she would have paid for a wholly different policy than that applied for. The judgment is for the right party and will be affirmed.

*Farrington* and *Bradley, JJ.,* concur.