LUCIE E. O'MALEY, RESPONDENT, v. THE NORTHWESTERN MUTUAL
LIFE INSURANCE CO., APPELLANT.—95 S. W. (2d) 852.

Kansas City Court of Appeals.   May 25, 1936.

*Henry S. Conrad, L. E. Durham, Hale Houts* and *William J. Carroll* for respondent.

. *P. E. Reeder, Leland Hazard, George J. Winger* and *Winger, Reeder, Barker & Hazard* for appellant.

SHAIN, P. J.—This is termed an action for damages for breach of contract. On September 13, 1930, the defendant herein issued to George T. O'Maley its policy of life insurance in the amount of $10,000 in consideration of an annual premium of $498.70.

It stands admitted that O'Maley complied with the terms of the contract up to the time of his death and that due proof of death was made. It is claimed in this action that defendant, in making settlement, wrongfully deducted the principal sum of $432.70 and this suit is for the recovery of said alleged amount so claimed to have been deducted with interest from March 2, 1934, at the rate of six per cent, to-wit, for damages in the sum of $432.70 and interest and for attorney fees in the sum of $250.

It appears that the defendant company issued to George T. O'Maley in his lifetime four other policies, to-wit: On July 8, 1932, a policy for $40,000 for consideration of annual premium of $2180 payable quarterly (see reported case No. 18637.) On June 29, 1929, a policy for $50,000 for consideration of annual premium of $1017 payable semi-annually (see reported case No. 18638.) On June 27, 1929, policy for $25,000 for consideration of annual premium of $1182 payable semi-annually (see reported case No. 18639.) On June 27, 1929, a policy for $25,000 for consideration of annual premium of $1182 payable semi-annually (see reported case No. 18640).

With the exception of policy for $25,000 issued June 27, 1929, (reported case No. 18639) the policies were what is known as "Prepaid."

Five separate suits were brought in the circuit court for damages for alleged breach of contract, each suit based upon a separate policy as indicated by the designated numbers above and cause of action in each is based on an alleged wrongful deduction made by the defendant. In other words, defendant in each instance paid all that the policy called for except the principle amount sued for in each case.

The plaintiff's pleadings in the five cases are identical except as to dates and amounts. In other words, the issue of law in each is the same and the issues of fact are the same with the exception that in

case No. 18639, wherein the policy was not what is known as a "Prepaid."

The real issues in all of the five cases are best presented in defendant's answers and the plaintiff's replies and the issues as presented in answer and reply in one case conforms to that in each of the cases except as to an issue presented in case No. 18639, which is not a prepaid policy.

Defendant in its answer filed herein admits its incorporation; admits the issuance of the policy and no question is raised as to the death of insured nor as to proof of loss. The defendant pleaded full settlement and accord in accordance with the terms of the contract.

The defendant pleaded the following, which is shown to be a part of the contract, to-wit: "If the age of the insured has been misstated the amount payable hereunder shall be such as the premium paid would have purchased at the correct age."

It stands admitted that the insured stated the date of his birth as March 13, 1879, and it stands admitted that the actual date of his birth was March 13, 1878.

As to the above, the defendant answers as follows:

"Defendant further states that on the 28th day of June, 1929, defendant did at its home office and principal place of business in the city of Milwaukee, state of Wisconsin, accept the said application of the said George T. O'Maley for said policy of insurance without condition or restriction and the said insurance did on said date and at said place become effective and that said policy of insurance did become a valid and binding contract at that time and place between the said George T. O'Maley and this defendant; and that said contract of insurance is ruled and controlled by the laws of the state of Wisconsin and there is no statute or law or decision of said state impairing the full force and effect of the policy clause respecting misstatement of age hereinafter in paragraph seven (7) set forth, and said clause is valid and binding in said state by reason of the following statute of said state:

" 'If the age of the insured has been misstated in an application for a policy of life insurance and the error shall not have been adjusted during the lifetime of the insured, the amount payable under the policy shall be such as the premium paid would have purchased at his correct age, except that if the insured at the time the insurance was applied for shall have been beyond the maximum age limit designated by the insurer, the insurer may, at its option, admit a minimum liability equal to the amount of premius collected under the policy. This section shall apply to fraternal benefit societies.' [1933 c. 487 s. 245.]"

**42**

The defendant sets forth in its answer the following communication sent by the plaintiff.

"Kansas City, Missouri
"January 11, 1933.

"The Northwestern Mutual Life Insurance Co.
"Milwaukee, Wisconsin.
"Gentlemen:—

"Supplementing my claim in connection with various policies issued by the Northwestern Mutual Life Insurance Company on the life of George T. O'Maley, deceased, in answer to question 4 (b) of the claimant's statement, I wish to advise that the correct date of the insured's birth was March 13, 1878.

"It is understood and hereby agreed that settlement of my claim will be made on the adjusted basis, the Company allowing such amount as the premiums paid would have purchased at the correct age.
"Witness.                                    Lucie E. O'Maley.
"W. J. Carroll."

The defendant further answers as follows, to-wit:

"Defendant further states that pursuant to said request and in reliance thereon and in order to fully settle, compromise and adjust the then existing dispute and controversy between defendant and said Lucie E. O'Maley, plaintiff herein, with respect to the amount payable under said policy, defendant did pay and deliver over to said plaintiff the sum of $23,942.00.

"8. Defendant states that the said misrepresentation of age by said George T. O'Maley was the misrepresentation of a matter which actually contributed to the contingency or event on which the said policy might become due and payable and such misrepresentation rendered said policy wholly null and void and defendant would have so claimed at the time of the death of the said George T. O'Maley except for said adjustment provision heretofore stated in paragraph seven (7), and that the payment aforesaid to the said Lucie E. O'Maley, plaintiff herein, was in full settlement, compromise and adjustment of her claim against this defendant for the sum of $25,000.00.

"9. Defendant further states that the difference in premium on the aforesaid policy between the premium actually paid by the said insured and the premium which should have been paid at the true and correct age of said insured, amounts to the sum of $178.00; in other words, that if the said insured had stated his true and correct age and given his true and correct date of birth as March 13, 1878, instead of March 13, 1879, this defendant would have charged as a premium for the said contract of insurance $178.00 more than was actually charged and paid by the said insured for said policy of insurance; that to require this defendant to pay any more than has

actually been paid by this defendant to the beneficiary would cause this defendant to make a distinction or discrimination in favor of the insured and the beneficiary in said policy, as between said insured and said beneficiary and other insurants in the state of Missouri contrary to the policy and statute of the state of Missouri, to-wit, Section 5729 of the Revised Statutes of Missouri, 1929, which provides as follows, to-wit:

"No Life Insurance Company doing business in this state shall make or permit any distinction or discrimination in favor of individuals between the insurants (the insured) of the same class and equal expectations of life in the amount or payment of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contract it makes. . . .'

"10. Defendant further states that to compel the defendant to pay any additional sum of money under said policy of insurance other than the amount already paid pursuant to the clause of said policy heretofore referred to in paragraph seven (7) of this answer, and pursuant to the aforesaid settlement and adjustment, would result in causing this defendant to pay as alleged proceeds of said policy of insurance a sum of money for which no premiums or other consideration has been paid and would result in taking the property of this defendant without due process of law contrary to Section 30 of Article II of the Constitution of Missouri; and contrary to Section I of the Fourteenth Amendment to the Constitution of the United States of America; that so to compel this defendant to pay said additional sum or any additional sum as alleged proceeds of said policy of insurance would impair the obligation of contract contrary to the provisions of Section 10, Article I of the Constitution of the United States of America.

"Wherefore, defendant prays to go hence without day and for its costs herein expended."

The plaintiff in reply denied all alleged new matter stated in defendant's answer and — —

"Further replying, plaintiff states that by the terms and provisions of the application for the policy of insurance herein sued on, defendant had until delivery of said policy to George T. O'Maley, applicant therefor, to consider the question of acceptability of the risk, the subject of said application; that the acceptance by defendant of said application and said risk was not complete and was not communicated to said applicant until delivery to said applicant of said policy; that defendant issued said policy and transmitted the same to its agent at Kansas City, Missouri, to be carried and handed by said agent to said applicant at Kansas City, Missouri; that defendant's said agent so carried and delivered said policy to said ap-

plicant at Kansas City, Missouri, and then and there communicated to said applicant defendent's acceptance of said application and said risk, and that by reason thereof the contract of insurance so made and entered into by the applicant aforesaid and defendant was and is a contract made and entered into within the State of Missouri, and that the applicable laws of Missouri became and are a part thereof.

"Replying further, plaintiff states that at the time of the pretended compromise and settlement of plaintiff's claim and the execution of the written request mentioned in defendant's amended answer, there was not existing between plaintiff and defendant a real, *bona fide* dispute or controversy concerning the amount due plaintiff in accordance with the terms and provisions of the policy of insurance herein sued on, and there was not at said time existing between plaintiff and defendant a real *bona fide* dispute or controversy concerning any matter which actually contributed to or caused the death of the insured by said policy; that at said time said sum so due plaintiff was liquidated, and the exact amount thereof fixed by express terms of said policy of insurance; that said sum so due plaintiff exceeded the amount paid plaintiff therefor by defendant in the amount of one thousand fifty-eight and no/100 dollars ($1058.00), and that said pretended settlement, satisfaction and discharge of defendant's said obligation to plaintiff was and is wholly without consideration and was not and is not binding on plaintiff.

"Wherefore, having fully replied, plaintiff asks judgment as in her petition prayed."

A jury was waived and cause was tried by the court. The court made findings of fact and gave conclusion of law and found for the plaintiff and rendered judgment for plaintiff for principal sum of $432.70, interest $34.14, damages $43.27, attorney fees $150.00, total $660.11 and costs.

From the judgment the defendant duly appealed.

In each if the five cases the judgment was for the plaintiff and all were duly appealed and by stipulation of parties the cases were consolidated as to records, briefs and argument.

As the question of law is identical in each of the five cases and as questions of fact in issue are identical with exception of case No. 18639, we adopt the course followed by agreement of parties and in all matters that are in common the presentation and conclusions of the court will be confined to this opinion and in short opinions we will discuss and conclude as to matters that are presented and not concluded herein.

OPINION.

The defendant alleges the contract upon which this case rests is a Wisconsin contract and the law of that state concerning such contracts is duly plead.

The plaintiff in replay denies that the contract is a Wisconsin contract and denies that the law of Wisconsin has application and urges the application of our Missouri statutes.

The above presents the crucial question to be determined in this group litigation. To conform with relative positions in the trial court, we will continue to refer to the respondent as plaintiff and to the appellant as defendant.

The defendant in its brief makes assignment of errors under eleven heads. However, in its points and authorities and in the written argument the presentation is under six topical heads, which we will follow as follows, to-wit:

## I.

"The insurance contracts are Wisconsin contracts.

A. The contracts were consummated in Wisconsin.

B. The place of performance was Wisconsin.

## II.

"A misstatement in age is material within the meaning of Section 5732 of the Revised Statutes of Missouri, 1929.

## III.

"To deny appellant its contract right to adjust the liability under the policies to such amount as the premiums paid would have purchased at the correct age, would result in a discrimination in favor of respondent, and against other insurants, contrary to the provisions of Section 5729, R. S. Mo. 1929.

## IV.

"There is no evidence to sustain the findings of fact and conclusions of law made by the court below.

## V.

"To force the appellant to pay the face amount of the policies sued upon would violate constitutional rights secured by the Constitution of the State of Missouri and the Constitution of the United States.

## VI.

"On the question of vexatious delay."

As a prelude to our discussion, the writer takes occasion to say that the law of Wisconsin, whether or not applicable to the case at bar, is to be commended for its common sense and fairness.

The case at bar is, however, purely a suit at law. Our courts often declare that equity always follows the law but none, as yet, have been bold enough to declare that statutory law always follows equity.

In our consideration of the issue before us, we must go to the controlling opinions of our own state in determining the question as

to whether the contract involved be concluded to be a Wisconsin or a Missouri contract and when that question is thus determined, to look for guidance in the statutes and opinions of the state determined as the state of the contract.

A study of the statutes of Missouri and the opinion of the courts interpreting the same reveals a legislative intent to provide, in so far as possible, that contracts secured by foreign life insurance companies licensed to do business in this state be subject to the laws of Missouri.

It is undoubtedly the law in Missouri that when an insurance policy is issued on an application executed in Missouri and with provision for delivery in Missouri and the policy is so delivered in Missouri, that the contract of insurance is to be considered a Missouri contract. [Limbaugh v. Monarch Life Ins. Co. of Springfield, Mass., 84 S. W. (2d) 208; Lukens v. International Life Ins. Co., 269 Mo. 574.]

The provisions as to delivery and acceptance as contained in the application, same being part of contract, are as follows:

"It is agreed (1) that if the premium for the insurance hereby applied for is paid to the agent at the time of making this application, the attached receipt form, duly executed, to be the only evidence of such payment, and if the Company shall be satisfied that the applicant was, according to the rules and standards of the Company, an acceptable risk for the amount of insurance and upon the plan hereby applied for on the date hereof, or on the date of the medical examination therefor, whichever is later, the insurance shall be effective in accordance with the provisions of the policy applied for from the date hereof, or from the date of the medical examination, whichever is later, *and such policy shall be issued and delivered to the applicant, the Company having until the delivery of said policy to consider the question of such acceptability;* and (2) that if the Company shall reject this application, the amount paid as premium shall be returned, *and that the failure of the Company to deliver a policy as applied for within sixty days after the date hereof may, at the option of the applicant, be deemed a rejection of this application;* and (3) that if the premium for the insurance hereby applied for is not paid to the agent at the time of making this application, no insurance shall be effected and no liability shall exist unless an until a policy as applied for is issued and delivered to the applicant and the first premium thereon actually paid during his lifetime." (Italics ours.)

The application is shown as made in Missouri and the above alleged facts of acceptance and delivery stand admitted as to delivery, the agent testifying as follows:

"Q. When did you first see this policy after you sent the application to the company's office in Milwaukee? A. It was in my mail box.

"Q. Here in Kansas City, Missouri? A. Yes.

"Q. And you received it there as the agent of the defendant company? A. Yes.

"Q. And what did you do with the policy when you received it as agent of the company here in Kansas City, Missouri? A. I delivered it to Mr. O'Maley."

We conclude from the evidence that the actual delivery of the policy was in the state of Missouri. It follows that as the application for the policy was made in Missouri and the question of acceptability was deferred by defendant until delivery, we must conclude the contract to be a Missouri contract subject in all respects to the laws of Missouri.

Section 5732, Revised Statutes, Missouri, 1929, reads as follows:

"MISREPRESENTATION.—No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this state, shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case shall be a question for the jury."

As we gather from the record showing herein, the amount deducted from the face of the policy in issue was made, when made, without controversy and without any consideration expressly passing in a settlement of a disputed amount. The trial court so held and we conclude was justified in so holding.

The question of the right to sue for, if wrongfully deducted, is not seriously controverted. The right to sue and recover under such circumstances is recognized by the courts of Missouri. [Sappington v. Central Mutual Ins. Assn., 77 S. W. (2d) 140-144; Yancey v. Central Mutual Ins. Assn., 77 S. W. (2d) 149-154.]

Misrepresentation as to age has repeatedly been held by our courts to come within the purview of section 5732, supra. [Burns v. Insurance Co., 141 Mo. App. 212; Burgess v. Insurance Co., 230 S. W. 315.]

Under its point three, the defendant urges that in interpretation of section 5732, section 5729, Revised Statutes, Missouri 1929, should be taken into consideration. Section 5729 is a penal statute forbidding life insurance companies to make discrimination between policyholders. Defendant urges that to permit plaintiff herein to recover would result in a discrimination forbidden by law.

Our courts hold that a violation of the provisions of section 5729 does not render the contract either illegal or void. [Landau v. N. Y. Life Ins Co., 199 Mo. App. 344, 203 S. W. 1003.]

For the violation of the statute there is provided a penalty. We conclude that there is nothing in said section 5729 that justifies a departure from the construction given by our courts to said section 5732.

In our opinion the defendant need not fear of infliction of penalty based upon the situation presented in the case at bar.

Under point four defendant contends that the evidence does not sustain finding of fact and conclusions made by the trial court.

Under the law of the state of Missouri defenses based upon misrepresentations are declared to be affirmative defenses wherein the burden rests upon the defense.

Based upon our findings of law, as presented above, and in consideration of the fact that there is no credible testimony supporting the affirmative defense, we conclude that no error is presented in defendant's point four.

Dr. Baker, a witness for the defense, testified as follows:

"Q. You yourself, sitting here in your professional capacity as a witness in this court, are not able to tell this court from any testimony you have been given here how long Mr. O'Maley might have lived? A. No, sir.

"Q. So far as the evidence here is concerned he might have died a month after his application was taken out, and he might have lived twenty years? A. Yes."

In point five, defendant claims in effect that a finding against it on the issues presented would violate its constitutional rights. The Supreme Court of Missouri has repeatedly held section 5732, supra, to be constitutional. We conclude that the interpretation of the law, as given by the trial court and acquiesced in by this court, does not present a situation wherein defendant's constitutional rights are violated.

Under point six the defendant urges error in the allowance of penalty and attorney fees for vexatious delay. As to this, as well as to all other matters, the trial having been before the court without a jury, it becomes our duty to uphold the judgment of the trial court upon any theory consistent with the law and the evidence. We conclude that the question of vexatious delay must be considered from the standpoint that the contract in issue is a Missouri contract and that, therefore, no justification for deducting the principal amount sued for from the face of the policy existed. This being so, we conclude that we would not be justified in holding that the court committed error in respect to its findings on the issue of vexatious delay.

As the defendant interposed a demurrer at the close of all of the evidence, we have taken up and discussed any given conclusions on all points presented in the points and authorities and argument in defendant's brief. Having concluded that the contract is a Missouri contract, we are duty bound to declare the law as declared by the last controlling cases of the courts of this State. This we must do regardless of our opinion of the fairness of our law as compared with the law of other states.

As to section 5732 of our statutes, there were conditions existing that had to be met. If, in order to right a wrong, we have gone too far, the enforcement of the law as it exists will in time bring correction.

Finding no error that justifies us to another course, the judgment is affirmed. All concur.