Lorene A. BURCH and William J. Burch, Plaintiffs,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, a corporation, Defendant.

No. 11075.

United States District Court
W. D. Missouri, W. D.

Sept. 26, 1958.

910

Harry P. Thomson, Jr., of Shughart & Thomson, Kansas City, Mo., for plaintiffs.

Blackmar, Swanson, Midgley, Jones & Eager, Kansas City, Mo., for defendant.

R. JASPER SMITH, District Judge.

This is an action on a life insurance policy issued by defendant to William J. Fisher, the insured, in which plaintiffs were named as beneficiaries. The primary policy was in the amount of $5,000, and by rider, decreasing term insurance was provided which for the purpose of this suit is in the amount of $10,000. The insured died on April 22, 1956. Defendant paid the amount of the primary insurance, but refused to pay the amount of the decreasing term life insurance for the claimed reason that the premiums on the policy were delinquent and that the grace period expired on April 20, 1956, two days before the death of the insured. Plaintiffs have sued for the decreasing term insurance together with interest, penalties and attorneys

fees authorized by Missouri statutes for vexatious refusal to pay.

In his application, the insured requested that all premiums be paid monthly, and concurrently with his execution of Part 1 of the application he paid the first full month's premium in the amount of $10.25 to one Larson, defendant's agent, and received a written receipt therefor. On July 20, 1955, the medical portion, or Part 2 of the same application, was completed. Pursuant to this application and initial premium payment, defendant's original policy of insurance No. 31,190,864, bearing date of August 19, 1955, was approved and issued by defendant at its Houston, Texas, Regional Home Office. On August 22, 1955, the policy was received at defendant's Branch Office in Kansas City, and was personally delivered either to Mr. Fisher, the insured, or Mrs. Burch, one of the beneficiaries, on or after that date.

There were major conflicts in testimony as to the number of monthly premium payments made on the policy subsequent to its delivery date. Plaintiffs insist that a premium payment was made at the date of delivery of the policy, on or after August 22, 1955. Defendant insists —and it is supported by the policy terms —that no premium was paid by or on behalf of the insured when the policy was delivered, and that the second or next premium was not due until September 19, 1955. Notwithstanding the contentions of plaintiff in this connection, I find that only six monthly premium payments, each in the amount of $10.25, were paid upon this insurance after the initial premium payment made on or about July 14, 1955. These premiums were paid to the defendant acting through its agent Larson on the following dates: October 15, 1955, November 18, 1955, December 19, 1955, January 19, 1956, March 13, 1956, and March 22, 1956. These six payments respectively represented the monthly payments which, according to the language of the policy, were due on September 19, 1955, and continuing monthly thereafter on the 19th day of each successive calendar month through February 19, 1956. The monthly premium due according to the policy language on March 19, 1956, was never paid or tendered to the defendant, and if defendant's contentions are correct the policy lapsed and ceased to have force and effect on April 20, 1956, by reason of non-payment of the March 19, 1956, premium.

■ Although it is urged by plaintiffs that because of the irregular calls made by defendant's agent Larson, and the practice of making irregular collections at varying intervals, defendant misled or harmed the insured and the beneficiaries relative to the practice of collections of premiums due, there is nothing in the record sufficient to constitute a waiver, or conduct calculated to mislead the insured or the beneficiaries. Clearly, agent Larson was authorized to collect and receipt for premiums, and his actions in that regard are the actions of defendant. However, as I see the evidence, only one monthly installment may have been collected after the recited grace period had expired, and that was the premium apparently collected on March 22, 1956. One isolated instance is not a sufficient course of conduct to constitute a waiver for all purposes of the provisions of the policy requiring payment of premiums. The only other occasion where there was a delay beyond the grace period recited in the policy was the monthly premium claimed to be due on January 19, 1956, and this was the subject of a formal reinstatement request and payment on or about March 13, 1956.

■ On the other hand, the evidence is not sufficient to show that the insured by his own conduct necessarily demonstrated a belief and intent that all premiums subsequent to the initial premium were to be due and payable on the 19th day of each succeeding calendar month. And for that reason, the beneficiaries, standing in the shoes of the insured here, are not estopped by insured's conduct to challenge the apparent effective date of the policy.

If the policy became effective August 19, 1955 or earlier, with only seven pre-

mium payments in fact made, with no waiver of the limitations on grace periods, the policy lapsed for nonpayment of premiums, and plaintiff is not entitled to recover. On the other hand, if the policy became effective on or after August 22, 1955, even with only seven premium payments, the grace period had not expired at the date of death of the insured, and plaintiff is entitled to recover.

■ This is a matter controlled by Missouri law, and presents many perplexing questions. Four significant dates are involved. Each might furnish a basis for an effective date, and hence the policy provisions must be considered ambiguous. Part 1 of the application was executed July 14, 1955. Part 2, the medical questionnaire, was completed July 20, 1955. The policy was approved and issued by the defendant at its Regional Home Office in Houston, Texas, on August 19, 1955, the date appearing on the face of the policy. The policy arrived in Kansas City August 22, 1955, and was delivered by an agent sometime thereafter.

Part 1 of the application, which became a part of the policy, provides in part as follows:

"The Undersigned Agree(s) That:

"(1) the matter contained in Parts 1 and 2 of this application shall become a part of the policy hereby applied for;

\*  \*  \*  \*  \*  \*

"(4) if the full first premium on the policy applied for is paid at the time of signing Part 1 of this application and if the completed Part 1 and completed Part 2 of this application and such other information as may be required by the Company are received by the Company at one of its Home Offices and if the Company determines to its satisfaction that the proposed insured was insurable on the date of Part 1 or Part 2, whichever is the later, on the plan for the amount and at the premium rate applied for, the insurance in accordance with and subject to the terms and conditions of the policy applied for shall take effect as of the date of Part 1 or 2, whichever is the later (or an earlier date if requested in this application and permitted by the rules of the Company) except that if on request the policy is to bear a date later than both Parts 1 and 2, no insurance shall take effect until such later date and then only if the proposed insured's health, habits and occupation and any other conditions remain as described in this application to such later date;

"(5) unless the insurance takes effect in accordance with the immediately preceding agreement "4", no insurance shall take effect unless a policy is issued by the Company and received by the proposed insured or by the applicant if other than the proposed insured and the first full premium thereon is paid, all while the proposed insured's health, habits and occupation and any other conditions remain as described in this application, in which case the insurance shall be deemed to have taken effect as of the date on the face of this policy."

Defendant contends that the controlling date is July 20, 1955. Basically, defendant claims that although the policy was dated August 19, 1955, the insured received a month's coverage without cost under what is denominated temporary or interim insurance designed to protect the applicant's insurability. In effect, it is contended that thirteen months of coverage was provided for twelve months premiums paid; and to support this, defendant has cited a line of Missouri cases holding that where an application for insurance contains a provision that the insurance is to take effect upon acceptance of the application, a delivery of the policy is not essential. Under them, the significant act in the creation of an effective policy is the act of acceptance by the insurer. Plaintiffs on the other hand contend that in view of the language of the application, con-

trolling Missouri law makes the policy effective on the date of actual delivery.

■ There are several divergent lines of authorities concerning the effective date of policies. This lack of homogeneity is not caused by any necessary inconsistency in the law, but rather by varying factual circumstances. Elementary in this variation undoubtedly is the fact that the several companies have differing application procedures. Since several lines of authority do exist, careful analysis is necessary to avoid a misapplication of the law. One primary group of cases is Howard v. Aetna Life Insurance Co., 1940, 346 Mo. 1062, 145 S.W.2d 113; Halsey v. American Central Life Insurance Co., 1914, 258 Mo. 659, 167 S.W. 951; and Hampe v. Metropolitan Life Insurance Co., Mo.App.1929, 21 S.W.2d 926. These cases establish the rule that where an insurance contract stipulates that it shall not go into effect until certain contingencies have occurred, such as delivery of the policy while the applicant is in good health and the payment of the first premium, but the policy indicates on its face a prior effective date, that it is the date of delivery which is the significant act in determining the effective date of the policy.

■ Certain distinguishable tangents have grown up about this rule, which furnish the basis for a separate group of cases. If there has been an expressed agreement for a valuable consideration that a certain date is to control, such as, for example, predating the policy in order to obtain a lower insurance age, the courts have enforced the contract on which the parties agreed. See Tabler v. General American Life Insurance Co., 1938, 342 Mo. 726, 117 S.W.2d 278; Prange v. International Life Ins. Co. of St. Louis, 1932, 329 Mo. 651, 46 S.W.2d 523, 80 A.L.R. 950.

■ A third group of cases follows a different premise, and it is this group upon which defendant primarily relies. At first blush these cases could be cited for the proposition that it is the act of acceptance of the application by the insurer which is the controlling act in bringing a policy into being. Under this authority such questions as when the policy went into effect and what law is controlling in interpreting the policy are determined by when and where the act of acceptance by the insurer takes place. See Bearup v. Equitable Life Assurance Society, 1943, 351 Mo. 326, 172 S.W.2d 942; State ex rel. Equitable Life Assurance Society v. Robertson, Mo.1917, 191 S.W. 989; Eyring v. Kansas City Life Insurance Co., 1939, 234 Mo.App. 328, 129 S.W.2d 1086; Fields v. Equitable Life Assurance Society, Mo.App.1938, 118 S.W.2d 521. The procedure contemplated by these cases is that the prospective policyholder makes application, and upon approval by the insurer the policy goes into effect. The Missouri courts in interpreting the contract made by the parties have held that the approval by the officers of the insurance company brings the insurance into effect eo instanti. It must be emphasized that no ambiguity existed in these cases. A specific effective date had been stipulated, and the courts merely enforced the contract as made between the parties.

■ With this discussion of the applicable major lines of Missouri authorities, we may now analyze the factual situation presented here. Since the initial premium for this policy was paid when Part 1 of the application was signed, it is not a significant factor in determining when liability attached. Paragraph 4 of the application generally contemplates that coverage takes effect as of the date of Part 1 or Part 2, whichever is later. An exception to this stipulation is provided in that the policy can bear a later date upon request. In the absence of a request, therefore, effective application of Part 1 or 2 would require that in this instance the policy be dated July 20, 1955. The policy on its face shows that neither the date of Part 1 nor Part 2 was chosen as controlling. Neither does the application nor the evidence show in any way that a request was made for a later date. Defendant selected August 19, 1955, as the date of the policy. Since

neither Part 1 nor Part 2 were established as the effective date, the insurance must have gone into effect in accordance with Paragraph 5 of the application. Under the provisions of that paragraph, the rule established by the Halsey, Hampe and Howard cases, supra, is controlling. Under those decisions, even though the policy recited a prior effective date, the controlling date is the date of delivery. Hence the policy went into effect August 22, 1955, or a date subsequent thereto.

In Prudential Insurance Company of America v. King, 8 Cir., 1939, 101 F.2d 990, a similar problem to the one now under consideration was presented. It was there necessary that the court construe a policy issued by the same insurer, Prudential Insurance Company, in order to ascertain its effective date. Part 1 of the application was dated February 11. Part 2 was completed February 15. The policy bore the date of February 11. Under the factual situation, if the effective date was February 11, the policy had lapsed when the insured died; if February 15 was controlling, the policy was in force at the time of death. The Court first established that an ambiguity existed with respect to the date of initial coverage. After pointing out that if the language of a policy is ambiguous it will be construed in the manner most favorable to the insured, the Court applied the specific Missouri law as to the effective date of coverage. The Halsey case, supra, was cited as applicable. If in that case an ambiguity existed between February 11 and February 15, a fortiori in this case where the choice is between four days, the ambiguity is more acute.

Another element remains to be considered. Defendant has cited Scotten v. Metropolitan Life Ins. Co., 1935, 336 Mo. 724, 81 S.W.2d 313, and Evans v. Equitable Life Assurance Society, Mo. App.1937, 109 S.W.2d 380, as authority for the statement that if a policy or a contract is ambiguous, the construction placed upon it by the parties will be adopted by the courts. The suggestion is that by their conduct, the parties have placed an effective date on this policy of August 19, 1955, or at least have agreed between themselves that the 19th is the effective date for payment of premiums. As indicated previously in this Memorandum, the evidence does not indicate such a consistent course of conduct by the parties that it would amount to a construction placed on it by them.

For these reasons it is my conclusion that this policy became effective August 22, 1955, or thereafter, with the resultant conclusion that it had not expired on April 22, 1956, the date of the insured's death.

One further question remains. Plaintiffs have asked for statutory penalties and attorneys fees for vexatious refusal of defendant to pay the amount claimed, as authorized by Section 375.420 RSMo 1949.

An insurance company is allowed to entertain an honest difference of opinion regarding its liability, and so long as it acts in good faith, it may contest either an issue of fact or an issue of law without subjecting itself to the penalty of the statute. Clearly, in view of the perplexing problems of construction of Missouri decisions here, there is a substantial basis of difference of opinion as to the law. This is true, notwithstanding the fact that statutory penalties have been permitted in cases which furnish the basis for the ruling here. It is my conclusion, therefore, that plaintiffs are not entitled to the statutory penalties for vexatious refusal to pay.

All requested findings of fact and conclusions of law which are not incorporated in this Memorandum are denied.

The clerk is directed to enter judgment for the plaintiffs in the sum of $10,-000, together with interest at the rate of six per cent per annum from April 22, 1956.

It Is So Ordered.