PRUDENTIAL INSURANCE COMPANY
OF AMERICA, a corporation,
Appellant,

v.

William J. BURCH and Lorene A. Burch,
Appellees.

No. 16126.

United States Court of Appeals
Eighth Circuit.

June 23, 1959.

Rehearing Denied July 20, 1959.

Henry G. Eager, Kansas City, Mo. (Milton C. Clarke, and Blackmar, Swanson, Midgley, Jones and Eager, Kansas City, Mo., on the brief), for appellant.

Harry P. Thomson, Jr., Kansas City, Mo. (Don B. Roberson, and Shughart & Thomson, Kansas City, Mo., on the brief), for appellees.

Before SANBORN, VOGEL and VAN OOSTERHOUT, Circuit Judges.

VOGEL, Circuit Judge.

Lorene A. Burch and William J. Burch, plaintiffs, designated beneficiaries in a $10,000 decreasing term life insurance policy issued by the Prudential Insurance Company of America, defendant, to Mrs. Burch's son, William J. Fisher, as the insured, brought this action upon refusal of Prudential to make payment following the insured's death. The policy also contained a $5,000 face amount benefit which was admittedly paid without controversy as extended insurance. Such portion of the policy is not involved herein. The only question in the case is whether the policy for decreasing term life insurance had expired for non-payment of premium prior to the insured's death on April 22, 1956. The District Court held that it had not expired, Burch v. Prudential Insurance Co. of America, D.C.W.D.Mo.1958, 165 F.Supp. 909. This appeal followed.

On July 14, 1955, William J. Fisher, the insured, applied for the insurance involved, paid the first full monthly premium of $10.25 and signed Part 1 of

the application, which, among other things, provided:

"THE UNDERSIGNED AGREE(S) THAT: (1) the matter contained in Parts 1 and 2 of this application shall become a part of the policy hereby applied for; * * * (3) an acceptance by the proposed insured or by the applicant if other than the proposed insured of any policy issued on this application shall constitute an approval of the provisions contained in such policy * * *; (4) if the full first premium on the policy applied for is paid at the time of signing Part 1 of this application and if the completed Part 1 and completed Part 2 of this application and such other information as may be required by the Company are received by the Company at one of its Home Offices and if the Company determines to its satisfaction that the proposed insured was insurable on the date of Part 1 or 2, whichever is the later, on the plan for the amount and at the premium rate applied for, the insurance in accordance with and subject to the terms and conditions of the policy applied for shall take effect as of the date of Part 1 or 2, whichever is the later (or an earlier date if requested in this application and permitted by the rules of the Company) except that if on request the policy is to bear a date later than both Parts 1 and 2, no insurance shall take effect until such later date and then only if the proposed insured's health, habits and occupation and any other conditions remain as described in this application to such later date; (5) unless the insurance takes effect in accordance with the immediately preceding agreement '4', no insurance shall take effect unless a policy is issued by the Company and received by the proposed insured * * * and the full first premium thereon is paid, all while the proposed insured's health, habits and occupation and any other conditions remain as described in this application, in which case the insurance shall be deemed to have taken effect as of the date on the face of the policy."

At the same time the company's agent, Larsen, filled out and left with the insured a printed form of premium receipt, Plaintiffs' Exhibit 4, which contained substantially the same language but in addition the following:

"In all cases where the insurance does not take effect in accordance with the preceding paragraph, the above payment will be refunded by the Company unless a policy is issued and delivered by the Company to the applicant and accepted by the latter."

Agent Larsen testified that at the time the application was signed by the insured the following conversation was had:

"Q. At that time, what, if anything, was said during the conversation either by you or Mr. Fisher or Mrs. Burch regarding the effective date of insurance—in other words, when he would become insured? A. I don't recall whether William Fisher brought it up or I brought it up. I always state to my policyholders, as I did in that case, 'If this insurance is approved by the company, it goes into immediate effect when you pay your advance premium on the application.'

"Q. Which he did do at that time? A. Yes, sir."

On July 20, 1955, Fisher, the insured, was examined by a physician, who then completed Part 2 of the application, which was forwarded to the company's regional home office in Houston, Texas.

Ralph E. Fain, an associate counsel for the company, testified that this application was first received in Prudential's Houston underwriting department on August 12, 1955, approved for policy issue on August 17, 1955, and the policy issued at Houston with the policy date of August 19, 1955. As to the wherefore of the policy date, he explained:

"Q. * * * For what reason, if you please, was August 19, 1955, placed upon the face of that policy, sir? A. It was placed upon there because more than 21 days had elapsed between the date of the application and the approval of the

policy or the application in the Underwriting Division.

"Q. Is that in accordance with written, printed and published rules of the company? A. Yes.

\* \* \* \* \* \*

"Q. Do you know the purpose for that rule? A. Yes, because it is a service to the policyholders. If there is a delay in the issuance of the policy, quite frequently, the policyholder would feel that he has not needed the insurance since he has not died in the interim period of time and would request many times, that the policy be dated at the current date. So, to avoid that, we date it at the date of issue. That really, in effect, gives him free insurance for that particular period of time."

The policy was delivered on or after August 22, 1955, the latter being the date it was received by mail in the Kansas City District Office. On the first page the policy date was given as August 19, 1955, the first premium as $10.25, and the premium "due date September 19, 1955, and the 19th day of each month thereafter during the lifetime of the insured." On page 2, under "Payment of Premiums," the policy provided:

"The first premium, in the amount stated on the first page hereof, is payable on the delivery of this Policy. \* \* \* *subsequent premiums shall be payable in the amounts and on the due dates specified on the first page hereof*, \* \* \*. Any premium not paid when due shall be deemed to be in default. Except as provided in this Policy, the payment of any premium shall not maintain this Policy in force beyond the date when the next premium becomes due." (Emphasis supplied.)

A grace period of 31 days was provided on page 2. Page 7 contains the following:

"*Contract.*—This Policy is issued in consideration of the Application herefor and of the payment of premiums as provided herein."

Many times throughout the policy the "Policy Date" (August 19, 1955) is referred to.[1]

While there was some dispute in the evidence, the court (sitting without a jury) found on substantial evidence that "\* \* \* six monthly premium payments, each in the amount of $10.25, were paid upon this insurance after the initial premium payment made on or about July 14, 1955. These premiums were paid to the defendant acting through its agent Larson (sic) on the following dates: October 15, 1955, November 18, 1955, December 19, 1955, January 19, 1956, March 13, 1956, and March 22, 1956. These six payments respectively represented the monthly payments which, according to the language of the policy, were due on September 19, 1955, and

1. In the phrase entitled "Age" on page 2; in the "Table of Loan and Non-forfeiture Values" on page 3; in the "Basis of Computation" on page 3; in the "Decreasing Rider"; under "Suicide" on page 7; in connection with "Waiver of Premium Benefit in Event of Disability \* \* \*" at page 9; and on the outside of the policy cover "Policy Date August 19, 1955". The detailed "Non-Forfeiture Provisions" on page 2 use the language "due date of the premium in default" on three separate occasions and the decreasing term rider expressly provides:

"*In Consideration* of the payment of premiums as provided on the first page of the Policy to which this Rider is attached, the Company will pay, in the event of the death of the Insured during the Term Period specified below and while the Policy continues in force other than as extended insurance or reduced paid-up insurance, the amount indicated below \* \* \*.

\* \* \* \* \*

"The premium for this Benefit, shown on the first page of the Policy, is payable for the number of years specified or until the prior death of the Insured.

"The 'Payment of Premiums' \* \* \* provisions of the Policy are applicable to this Benefit.

\* \* \* \* \*

"This Benefit shall terminate in event of default in payment of premium hereunder or under the Policy for more than thirty-one days."

continuing monthly thereafter on the 19th day of each successive calendar month through February 19, 1956. The monthly premium due according to the policy language on March 19, 1956, was never paid or tendered to the defendant, and if defendant's contentions are correct the policy lapsed and ceased to have force and effect on April 20, 1956, by reason of non-payment of the March 19, 1956, premium."

When Mrs. Burch, mother of the insured and one of the beneficiaries, made the January 19, 1956, payment on March 13, 1956, she signed an application for reinstatement which recited that the policy "lapsed for non-payment of the premium due 1–19–56". She testified that she had been shocked to learn that the insurance had lapsed. When she signed request for reinstatement she knew that "the policy had previously lapsed and could not be reinstated without this form; and that a premium payment was due between January 19, 1956, and March 13, 1956."

The insured died on April 22, 1956. The trial court correctly stated the problem as follows:

"If the policy became effective August 19, 1955 or earlier, with only seven premium payments in fact made, with no waiver of the limitations on grace periods, the policy lapsed for nonpayment of premiums, and plaintiff is not entitled to recover. On the other hand, if the policy became effective on or after August 22, 1955, even with only seven premium payments, the grace period had not expired at the date of death of the insured, and plaintiff is entitled to recover."

Citing Howard v. Aetna Life Ins. Co., 1940, 346 Mo. 1062, 145 S.W.2d 113; Halsey v. American Central Life Ins. Co., 1914, 258 Mo. 659, 167 S.W. 951; and Hampe v. Metropolitan Life Ins. Co., Mo.App.1929, 21 S.W.2d 926, the trial court stated, 165 F.Supp. at page 913:

"These cases establish the rule that where an insurance contract stipulates that it shall not go into effect until certain contingencies have occurred, such as delivery of the policy while the applicant is in good health and the payment of the first premium, but the policy indicates on its face a prior effective date, that it is the date of delivery which is the significant act in determining the effective date of the policy."

Holding that:

"Since neither Part 1 nor Part 2 were established as the effective date, the insurance must have gone into effect in accordance with Paragraph 5 of the application. Under the provisions of that paragraph, the rule established by the Halsey, Hampe and Howard cases, supra, is controlling. Under those decisions, even though the policy recited a prior effective date, the controlling date is the date of delivery. Hence the policy went into effect August 22, 1955, or a date subsequent thereto."

Judgment was accordingly entered for the plaintiffs.

It is the contention of the defendant here that the trial court erred in holding that the policy did not become effective until delivery and therefore was in effect at the time of the insured's death on April 22, 1956. It contends that the insurance coverage was in force as early as July 20, 1955, in accordance with the terms of the application; that the policy as issued clearly provided that the monthly premiums were due on the 19th day of each month; that the parties by their conduct had conclusively treated the 19th day of the month as the premium-paying date; and that this policy lapsed on April 20, 1956, for non-payment of the March 19, 1956, premium.

Consideration of the application signed by the insured and the policy of which it became a part is essential. We requote a portion of Part 1, which specifically provides:

*"(4) if the full first premium on the policy applied for is paid at the time of signing Part 1 of this application and if the completed Part 1 and completed Part 2 of this application* and such other information as may be required by the Company *are received by the Company* at one of its Home Offices, *and if the Company determines to its satisfaction that the proposed insured was insurable on the date of Part 1 or 2, whichever is the later,* on the plan for the amount at the premium rate applied for, *the insurance* in accordance with and subject to the terms and conditions of the Policy applied for *shall take effect as of the date of Part 1 or 2, whichever is the later* \* \* \*."* (Emphasis supplied.)

From the foregoing it would appear clear that if the insured had paid the first full premium at the time of signing Part 1 and Part 2 was properly executed and sent to the company and the company determined to its satisfaction that the proposed assured was insurable on the date of either Part 1 or Part 2, whichever was the later, (all of which was established and is not controverted) the insurance took effect as of such date (here July 20, 1955). Had the insured died between July 20th and the issuance of the policy, unquestionably the company would have been liable to the beneficiaries for the principal sum named in the application, in that he was an insurable risk at the time of application. Had the insured's health or other conditions of insurability changed subsequent to July 20, 1955, and prior to the actual issuance or delivery of a policy, the insurance would still have been in effect.

Issuance of a policy was not a condition to the taking effect of the insurance. According to the clear terms of the application the insurance took effect as of the date of Part 2, namely, July 20, 1955. The fact that the company saw fit to make the policy date August 19, 1955, and fix the 19th of each month as the premium due date is completely immaterial and in no way affected the temporary or interim insurance which was in force between July 20th and the actual issuance of the policy.

The purpose of such interim coverage is to protect an applicant in the event not only of death but of a material change in his health or other conditions of insurability between the date of the application for the insurance and the time the company actually determines insurability and accepts the application.

The effective date of such coverage prior to the issuance of the actual policy contract has been recognized in a number of Missouri cases. In State ex rel. Equitable Life Assur. Soc. of the United States v. Robertson, Mo.1916, 191 S.W. 989, at page 992, the Supreme Court of Missouri stated:

*"Had the New York officers of the company approved the entire application, as it approved Kempf as an insurable risk, then unquestionably he would have been insured from that date, although ill health or death may have overtaken him prior to the issuance of the policy. \* \* \* The actual issuance of the policy, an ordinary life policy, cuts but little figure in the case,* for the reason that, if Kempf had no previous knowledge of its terms, they were certainly made known to him by the provisions of his application for the insurance." (Emphasis supplied.)

In Bearup v. Equitable Life Assur. Soc. of the United States, 1943, 351 Mo. 326, 172 S.W.2d 942, at page 945, the same court stated:

"Insured's and insurer's contract covered the subject matter. They agreed the policy should take effect as of the date of the receipt 'provided the applicant is on this date in the opinion of the society's authorized officers in New York an insurable risk under its rules and the application is otherwise acceptable on the plan and for the amount and at the rate of premium applied for \* \* \*.' Frequently the effective

date of a policy is conditioned upon delivery to the applicant and payment of premium, a condition which more often works to the disadvantage of the insured or his beneficiaries than to the disadvantage of the insurer. Parties may lawfully contract as to place of acceptance and the effective date of the agreement. Yount v. Prudential Ins. Co., Mo. App., 179 S.W. 749, 750; Winters v. Reserve Loan L. Ins. Co., 221 Mo. App. 519, 525, 290 S.W. 109, 113."

At page 946 of 172 S.W.2d:

" * * * By paying in advance he avoided, according to the terms of the application and receipt, the possibility of becoming a noninsurable risk between said date and the payment of the first premium. State ex rel. Equitable L. Assur. Soc. of United States v. Robertson, Mo.Sup., 191 S.W. 989, 992(3).

\* \* \* \* \* \*

"Cases wherein there is no agreement as to the effective mode of completing the contract (consult Limbaugh v. Monarch L. Ins. Co., Mo.App., 84 S.W.2d 208, 211 (1–4), and comment in 7 K.C.L.R. 129) or cases expressly providing that the contract is not to become effective until delivery and receipt of premium are not this case." (Emphasis supplied.)

See also New England Mutual Life Insurance Co. of Boston, Massachusetts v. Hinkle, 8 Cir., 1957, 248 F.2d 879.

In Rowland v. Missouri State Life Ins. Co., Mo.App.1932, 48 S.W.2d 31, 33, the court was dealing with a similar question; i. e., when the policy went into effect. There the St. Louis (Missouri) Court of Appeals said, at page 34:

"In this particular instance, so far as concerns the question of the effective date of the policy, the application proposed that the policy should take effect when the application had been approved by the company; and, so far as the record shows, the application was accepted by the company unconditionally * * * on June 26, 1928, the date when the policy was issued. *There was no provision for the effectiveness of the policy to be delayed until its delivery to the insured, as is so frequently the situation; and consequently cases involving the construction of an effective-on-delivery clause, upon many of which plaintiff relies, are of no moment here.* Likewise there was no provision for the effectiveness of the policy to be delayed until the payment of the first premium, so that question is also out of the case. Indeed, the whole contract, while providing that it should take effect upon the company's acceptance of the application, and that the risk should continue for the term of one year thereafter, specifically provided that the first premium should not be payable until the delivery of the policy. *Thus, when the application was unconditionally accepted, the mutual liabilities of the parties arose under the plain provisions of the contract;* that of the company to insure from that date for the duration of the risk at the amount specified therein, and that of the insured to pay the first premium, the amount of which was also specified therein, upon the delivery of the policy. In other words, when the policy was delivered, the amount of the first premium existed as a valid charge against the insured, in view of the fact that payment in advance had not been exacted as one of the conditions upon which the company's liability was to attach.

"We conclude therefore that, upon the general features of the case, the effective date of the policy was June 26, 1928, the date of its issuance, though it is true that the individual certificates were not delivered, and the first premium paid, until two days later. The point has been many times passed upon by our courts in the construction of insurance contracts, and the following authorities

will be found to serve as an ample basis for our decision: (Cases cited.)" (Emphasis supplied.)

In Wolfskill v. American Union Life Ins. Co., 1943, 237 Mo.App. 1142, 172 S.W.2d 471, 472, the court stated:

*"We are of the opinion that if the applicant, on the date of the application, was in good health and was insurable under defendant's rules on the plan and for the amount of insurance applied for, the insurance was in force from the date of the application and that the company could not arbitrarily decide otherwise.* It follows that, if this condition was fulfilled, and there is no evidence as to what were defendant's rules relating to the matter, the binding receipt provided insurance for the amount applied for, etc., at the time of the applicant's death, and the defendant is liable unless it has some other defense. Western & Southern Life Ins. Co. v. Vale, 213 Ind. 601, 12 N.E.2d 350, 353, 355; Stonsz v. Equitable Life Assur. Soc. of the United States, 324 Pa. 97, 187 A. 403, 107 A.L.R. 178; Hart v. Travelers' Ins. Co., 236 App.Div. 309, 258 N.Y.S. 711, 716; Colorado Life Ins. Co. v. Teague, Tex.Civ. App., 117 S.W.2d 849." (Emphasis supplied.)

In Eyring v. Kansas City Life Ins. Co., 1939, 234 Mo.App. 328, 129 S.W.2d 1086, at page 1088, the court said:

"The application contained the following pertinent provisions, among others:

" '1. The policy and the application together constitute the insurance contract.

" '2. "If this application is accompanied by the first premium in cash and shall be approved at the home office of the company, and a policy on the plan and for the amount applied for shall be issued while the applicant is alive and in good health, then the insurance shall be effective, subject to the terms and conditions of the policy, from twelve o'clock noon of the day this application shall be approved by the Medical Department at the home office of the company."

\* \* \* \* \* \*

" 'The application was dated August 15, 1934. The policy sued on was fully executed by defendant on August 23, 1934, was registered in the office of the insurance commissioner on August 25, and delivered to insured August 29, 1934. Insured died on September 28, 1935. No premium other than the first, was ever paid. If the contract of insurance became effective on the date of *execution* of policy, then the grace period of thirty-one days had expired prior to death of insured and plaintiffs cannot recover; but if the insurance did not become effective until August 29, 1934, the date of delivery of the policy, then plaintiffs are entitled to recover, and the judgment should be affirmed.'

\* \* \* \* \* \*

" \* \* \* In the case at bar there is no claim made of fraud, mistake or failure of consideration. Consequently we must determine first, before we attempt to 'construe' the policy, whether or not there is any uncertainty or ambiguity as to when the contract should become effective. If there is none then the contract speaks for itself.

" '*We think the language quoted from the application, supra, which we have designated as paragraph 2, clearly fixes the date when the contract should become effective.* It is plainly stated that both parties agree that it should become effective as of 12 o'clock noon the day the medical department approved the application, provided that a policy thereon should issue. Such a policy did issue in this case, bearing date of August 23, 1934, and two days later it was registered in the office of the State Superintendent of Insurance. We cannot agree with the contention

that a stenographer merely "wrote up" the policy. It was formally signed and executed by the officials of the company who are legally authorized to bind the company. From that date on, if insured had died immediately thereafter, and if the policy had never reached her or been delivered to her "during her life and good health", the beneficiaries thereunder would have been entitled to recover. *The effective date of this contract was not made to, and did not, depend upon its delivery to insured.* State ex rel. Equitable Life Assur. Soc. of United States v. Robertson, Mo.Sup., 191 S.W. 989, loc. cit. 992; Rowland v. Missouri State Life Insurance Co., Mo.App.,

48 S.W.2d 31, loc. cit. 34.

" 'It is urged by plaintiff that the contract did not become effective until same was delivered. We think such an argument, to be sound, must rest upon a provision of the contract to that effect. Pickett v. Equitable Life Assurance Soc., Mo.App., 27 S.W.2d 452, loc. cit. 454; Edwards v. Business Men's Acc. Ass'n, 205 Mo.App. 102, 221 S.W. 422, loc. cit. 425. Such is the principal of law announced in Halsey v. Insurance Co., 258 Mo. 659, 167 S.W. 951. *But the principle has never been made to apply to contracts except where the contract contained a clause making the insurance 'effective on delivery of the policy,' and to contracts which were considered ambiguous and uncertain as to the effective date and were so construed by the court.* Kennedy v. National Accident & Health Insurance Co., Mo.App., 76 S.W.2d 748, loc. cit. 752; Scotten v. Metropolitan Insurance Co., Mo.App., 68 S.W.2d 60. Hampe v. Metropolitan Life Insurance Co., Mo.App., 21 S.W. 2d 926; Bigakle v. Mutual Life Insurance Co., Mo.App., 34 S.W.2d 1019; O'Maley v. Northwestern Mutual Life Insurance Co., 231 Mo. App. 39, 95 S.W.2d 852.' " (Emphasis supplied.)

It is claimed by the plaintiffs in the instant case that the policy did not become effective until it had been delivered. The Eyring case, supra, clearly prohibits the application of the principle urged by the plaintiffs excepting where the policy contains a clause making the insurance "effective on delivery of the policy" and to contracts which are ambiguous or uncertain as to the effective date, thereupon calling for court construction thereof. Here the policy clearly provides for effective coverage as of July 20, 1955, and, as will be subsequently discussed, no ambiguity or uncertainty exists.

In Pickett v. Equitable Life Assur. Soc. of the United States, Mo.App.1930, 27 S.W.2d 452, at page 454 the court stated:

"The application, as will be noted from the allegations of the answer, is one that provides that the insurance shall take effect as of September 23, 1928, the date of the application, provided only that the insured on said date was, in the opinion of defendant's authorized officers in New York, an insurable risk under the rules of defendant, and that said application was otherwise acceptable on the plan and for the amount and at the rate of premium applied for. According to the allegations of the answer, there was no provision requiring that the contract of insurance should not become effective until the delivery of the policy to the insured as in the cases of Doty v. Western & Southern Life Ins. Co., [223 Mo.App. 360] 16 S.W. 2d loc. cit. 715; Cravens v. New York Life Ins. Co., 148 Mo. loc. cit. 599, 50 S.W. 519, 53 L.R.A. 305, 71 Am.St.Rep. 628, and Halsey v. Insurance Co., 258 Mo. 659, 167 S.W. 951. Here, according to the allegations of the answer, the policy became effective as soon as accepted unconditionally by the officers of the company, and, according to those allegations, a policy was issued and placed in the mails for unconditional delivery to the insured. It is

true that the insured had no knowledge of the acceptance of his application until the receipt of the policy by him, but *our courts have held, in this class of cases, that, when provision is made for the policy to go into effect upon the unconditional acceptance of the application therefor, delivery of the written policy, though contemplated by the parties, is not essential, unless made so by the contract.* Edwards v. Business Men's Accident Ass'n, 205 Mo. App. loc. cit. 109, 221 S.W. 422; State ex rel. v. Robertson (Mo.Sup.), 191 S.W. 989, 992; Crohn v. U. C. T., 170 Mo.App. loc. cit. 280, 156 S.W. 472." (Emphasis supplied.)

The trial court cited the Howard, Halsey and Hampe cases, supra, as authority for determining that the policy did not go into effect until August 22, 1955, or a date subsequent thereto, that is, when delivered to the insured. In the Halsey case, the application for life insurance provided that there should be no contract of insurance until the policy was issued and delivered and premium paid, and that the application and policy applied for should constitute the entire contract. There, although the policy was dated May 31, 1906, it was not delivered until June 5, 1906, at which time the premium was paid. The Supreme Court of Missouri held, at page 953 of 167 S.W.:

"Under the terms of this contract, which consisted of the application and the policy issued in pursuance thereto, the deceased was clearly insured for one full year from June 5, 1906, to the last minute of June 4, 1907."

That was in full accord with the provisions of the application. Such is not the situation in the instant case.

In the Hampe case, the application provided "that the company shall incur no liability under this application until it has been received, approved and a policy issued and delivered, and the full first premium stipulated in the policy has actually been paid to and accepted by

the company during the lifetime of the applicant, in which case such policy shall be deemed to have taken effect as of the date of issue as recited on the first page thereof."

The St. Louis (Missouri) Court of Appeals stated, at page 927 of 21 S.W.2d:

"For many years the Missouri courts, standing somewhat alone upon the question, have held that, *where an insurance contract provides that it shall not become effective until the happening of certain contingencies,* such as the delivery of the policy during the lifetime or good health of the applicant and the payment of the first premium, *but elsewhere recites a prior date of issue or due date, it is the date of delivery and payment which marks the beginning of the effectiveness of the policy,* and determines the time when each succeeding premium shall be paid. (Cases cited.)

*"This ruling is founded upon the theory that where there is no liability, there can be no insurance; * * *."* (Emphasis supplied.)

In the case at bar there was liability beginning July 20, 1955. Insurance was effective beginning on that date. Accordingly, the Hampe ruling and the theory upon which it is based has no applicability here.

In the Howard case, the application specifically provided that the policy to be issued should not become effective until the first premium had been paid during the good health of the insured and within 60 days from the date of the medical examination. The policy there was dated June 28, 1932, and was delivered sometime after July 1st and prior to September 10th. The first premium was not paid until September 10, 1932. The court stated, at page 115 of 145 S.W.2d:

"As we indicated above, neither in the application nor in the policy was there any agreement to have the policy dated prior to July 1st, and no action of the insured was pleaded which indicated that he had entered

into any such agreement. Had Wise died after the policy was delivered and prior to the payment of the first premium, respondent company would have defended on the theory that the policy was not in force. In its brief respondent does not contend that the policy was in force prior to September 10th. By the express terms of the policy and the application the insurance did not become effective until September 10, 1932."

In reversing the trial court's sustaining a demurrer to the complaint and remanding the case for trial, the Supreme Court, in effect, held that the effective date of the insurance coverage was September 10, 1932, when the first premium was paid. That was in specific conformity with the contract.

The Howard, Halsey and Hampe cases are not support for the contention that the coverage in the instant case was not effective until August 22, 1955, at which time the policy was delivered. In the Halsey and Hampe cases there were express provisions that no insurance would become effective until the policy was first issued and delivered, and in the Howard case the effective date was specifically conditioned upon payment of premium; thus, any earlier expressed or premium paying date was a nullity on the theory that the insurance company must provide protection for the full period for which the insured has paid. In the instant case, as we have already pointed out, it is perfectly clear that the "effective" date of insurance coverage was July 20, 1955. The "policy date" was August 19, 1955. The insurance was in effect between July 20, 1955, and August 19, 1955, but no premium was paid therefor. The reason for such interim unpaid insurance and a subsequent policy date was explained by the testimony of the company's associate counsel, supra. The first premium which the insured paid when he signed Part 1 of the application on July 14, 1955, was applied by the company on August 19, 1955, to carry it for one month or until September 19, 1955, but there was effective interim insurance after July 20, 1955. The three cases relied on by the trial court, (Howard, Halsey and Hampe, supra) did not provide for interim insurance and did specifically stipulate that the contract should not go into effect until certain contingencies had occurred. The only contingency awaiting "effective" coverage here was approval by the company, and, clearly, after such approval on August 17, 1955, coverage was in effect from July 20, 1955. Had the insured died the company would have been liable for the entire principal sum or had his physical condition or other evidence of insurability changed subsequent to July 20, 1955, coverage would still have been in effect.

The trial court also relied on and cited a case from this court, Prudential Ins. Co. of America v. King, 8 Cir., 1939, 101 F.2d 990. There also the question was the effective date of the policies involved. There, too, the application contained two parts in questionnaire form. The first, which was executed by the insured on February 11, 1930, at which time he paid the first premium, was intended to furnish the company with necessary personal and other data. The second, dated February 15, 1930, covered "declarations made to the medical examiner". This court held, at page 991:

"It seems to us perfectly plain that the two parts of each of the applications expressly constituted the entire application, and that neither part is complete without the other, so that until the second part of each application was executed on February 15, 1930, there were no applications for these policies. Therefore, the effective date of the applications was February 15, 1930, the date when they were completed.

"By the terms of the applications, the policies applied for were to take effect from the date of the applications, and, by the terms of the policies, the applications constituted a part of those contracts. Thus, by the terms of a part of the entire contract of insurance, the effective

date was February 11, 1930, while by the terms of the other part it was provided that the insurance should become effective February 15, 1930. It is therefore apparent that an ambiguity existed with respect to the effective date of these policies."

Holding under Missouri law that if the language of a policy is ambiguous the construction to be adopted is that most favorable to the assured, this court held that February 15, 1930, was the effective date of the insurance and it accordingly was in force at the date of the insured's death. That case is clearly distinguishable from the one at bar and lends no support to the plaintiffs' contention.

We conclude that the trial court erred when it prefaced its holding upon the existence of an ambiguity in the contract, from which it proceeded to construe the contract most favorably for the plaintiffs, establishing the delivery date as the effective date for all purposes, even that of subsequent premium payments. The contract specifically provided that if the first premium was paid when the insurance was applied for and the company determined the proposed insured was insurable as of the date of Part 1 or 2, the insurance should take effect as of the date of Part 1 or 2, whichever was the later. We find nothing ambiguous about that nor anything contradictory in the company's issuing a policy dated August 19, 1955, and providing for premium due dates on the 19th of each month thereafter. No uncertainty existed as to such provisions. Additionally, the insured requested a monthly payment policy, voluntarily paid the first one month's premium in advance, and in the application agreed that "(3) an acceptance by the proposed insured or by the applicant if other than the proposed insured of any policy issued on this application shall constitute an approval of the provisions contained in such policy * * *." The policy, as issued by the company, received and accordingly approved by the insured, specifically provided the date of the policy as August 19, 1955, and the monthly premium due dates as September 19, 1955, and the 19th day of each month thereafter. By the terms of the application the parties specifically agreed that the "effective date" of insurance was July 20, 1955, (the later date) but by the issuance of the policy by the company and its acceptance by the insured they agreed on a "policy date" of August 19, 1955, and premium due dates of September 19, 1955, and the 19th of each month thereafter. By their actions they have clearly treated the 19th of each month as the premium due date. The official premium receipts show the 19th as the premium due date. A reinstatement form signed by the plaintiff Mrs. Burch on March 13, 1956, because the January 19, 1956, premium had not been paid within the 31-day grace period, specifically recited that the policy had previously "lapsed for non-payment of the premium due 1-19-56."

The entire conduct of the insured and his mother and all of the circumstances surrounding their acts and the acts of the company indicate that they believed the 19th day of the month was the premium due date and the contract between the parties specifically so provided. We cannot escape the conclusion that the first effective date of the interim insurance coverage was July 20, 1955; that the premium due dates were September 19, 1955, and the 19th of each month thereafter; that no ambiguity existed; and that the policy lapsed for non-payment of premium prior to the insured's death.

Reversed and remanded with directions to dismiss.